MEYER et al. v. HAVEN et al.

(Supreme Court, Appellate Division, Fourth Department. January 18, 1899.)

1. BUILDINGS—SUBCONTRACT—READINESS TO PERFORM.

Where a subcontractor engaged to erect ironwork to bind brick walls notified the contractor that he was ready to put on the work, such notice is an assurance, on which the contractor may rely, that as soon as the walls are ready the ironwork will be immediately put on.

2. SAME—CONTRACTORS—CONTRIBUTORY NEGLIGENCE.

A contractor notified a subcontractor, who had agreed to brace brick walls with iron trusses, that the walls were ready for the work, after receiving notice from him that he would bind them with the trusses as soon as the walls were ready. The subcontractor, though he had ample time, failed to put on the trusses, because of which the walls were blown down. Held, that the contractor was not guilty of contributory negligence in failing to brace the walls until the ironwork was put in place.

3. SAME—DUTY OF SUBCONTRACTOR.

Where a contractor notified his subcontractor that walls were ready for the ironwork he had agreed to put on, and that it was necessary for their protection against the elements that the work should be done at once, and the subcontractor assured him that he was ready to do the work as soon as the walls were completed, the subcontractor is bound to use all the force necessary to finish the work as soon as practicable according to the notice.

4. SAME—FALLING WALLS—PROXIMATE CAUSE.

Where walls were blown down before they were secured by iron trusses, which a subcontractor had ample time to put on in accordance with his agreement, which would have secured them, the subcontractor's negligence, concurring with the storm, was the proximate cause of their fall, rendering him liable therefor.

5. SAME—MEASURE OF DAMAGES.

Where walls were blown down because of a subcontractor's negligence, the measure of damages is the necessary expense of rebuilding them.

6. SAME—DEFENSE.

It is no defense to a subcontractor's failure to bind walls with iron trusses immediately after their completion as agreed, because of which the walls were blown down, that the contractor failed to remove the staging he had used in erecting the same, which was not objected to.

7. SAME—CONTRACT—BREACH—EVIDENCE OF CUSTOM.

Evidence of a custom of masons to brace their walls after they are constructed is inadmissible in an action for breach of a subcontractor's agreement to bind the walls with iron trusses as soon as completed, which, if performed, would have secured them.

8. CONTRACT—PERFORMANCE.

Where a subcontractor agreed to bind walls with iron trusses immediately on their completion, he is bound to do the work immediately on notice, though no time was mentioned within which the work must be completed.

Appeal from equity term, Erie county.

Action by Carl Meyer and another against William R. Haven, impleaded with the New York Central & Hudson River Railroad Company. From an interlocutory judgment in favor of defendant Haven, plaintiffs appeal. Affirmed.

The action was instituted to foreclose a mechanic's lien for $13,789.10 and interest upon two erecting shops constructed for the New York Central & Hudson River Railroad Company, at Depew, in Erie county, known as shops "A" and "B." The defendant Haven assumed the burden of the defense. and alleged in his answer, among other things, a counterclaim for damages growing out of the failure of the plaintiffs to erect and place certain ironwork in shop B, which, by contract, they were bound to do, in time to prevent the destruction of a wall by wind and storm. Haven had a contract with the said railroad company to construct several large shops at Depew among which were the shops A and B, and in the spring of 1892 made a subcontract with the plaintiffs, in which the plaintiffs agreed to furnish and erect in place the structural ironwork of these shops. A portion of this ironwork consisted of the roof trusses and clear story frames. The trusses were to be 70 feet long, to reach from one to the other of the side walls of the building, and to rest upon them, and to be located 20 feet apart; each shop to have 25 trusses; the shops to be 522 feet long, 70 feet wide, and the side walls to be constructed of brick, 34 feet high. No time was specified in the contract between Haven and the plaintiffs within which the ironwork was to be done, but it was provided that the plaintiffs were to do the work and furnish the materials specified in compliance with the contract that Haven had made with the railroad company; and in that contract a time was fixed for the completion of all the buildings, but not so with each particular detail of the work. The details were to be prosecuted with sufficient force, and it was stipulated that "the work herein contracted for shall, under the direction of the engineer in charge of the work, be so prosecuted that the progress of contiguous work shall not be delayed." The plaintiffs contracted with a Philadelphia party, the Pencoid Iron Works, to furnish the trusses and clear story frames, and to forward them by railroad to Depew, and thereafter the plaintiffs, with the consent of Haven, contracted with the firm of Read & Gilman to assemble (to fasten together and ready to raise) and erect in position the trusses and clear story. About August 1, 1892, Haven, a practical mason, did erect the stone and brick work of shop B, and raised the brickwork of the walls of that shop to the height of 26 feet, but raised them no higher at that time, for the reason that the plaintiffs were not ready to put on the ironwork. This situation continued until about the 5th of 6th of September, 1892, when Read & Gilman, representing the plaintiffs, requested Haven to raise the walls of shop B to the height of 34 feet, as they were ready

to put on the ironwork. Haven proceeded to raise the walls to the required height, and on the 9th of September, in the forenoon, had completed about 160 feet in length of the walls. At 1 o'clock p. m. of that day, Haven served upon the plaintiffs a written notice, which was as follows:

"To the officers of the Buffalo Bridge & Iron Works [the name under which the plaintiffs transacted business]: Please take notice that the walls of erecting shop B at Depew are ready for the ironwork agreed to be furnished by you under your contract we made, and that the said walls and buildings and materials connected therewith are in great danger of injury from the elements in their present condition. The ironwork agreed to be furnished by you is absolutely necessary for the protection of said walls, buildings, and materials, and I shall hold you responsible for the damage which may be sustained by me for any cause by reason of your failure to furnish ironwork as agreed by you.

"Yours, truly,                                        W. R. Haven.
"Buffalo, September 9, 1892."

On the evening of that day (September 9th) Read & Gilman again requested the defendant Haven to continue raising the walls of erecting shop B to the height of 34 feet, and in accordance with such request the walls were raised to the extent of about 180 feet on Saturday, September 10th. On the 10th of September, Read & Gilman undertook to erect the ironwork upon that portion of the wall which had been raised to 34 feet, when it was discovered that the clear story frames intended to surmount said trusses, and to be erected with them, did not fit, nor fit the trusses; that attempts were made to discover the difficulty on the 10th, and to remedy it. On Sunday, the 11th, the plaintiffs did erect, through Read & Gilman, five of the trusses without clear story frames. On Monday two more trusses were erected, when the hoisting engine broke down, and interfered with the work, and before the engine could be made available a heavy rain set in at 11:20 p. m. on Monday, the 12th, and continued Tuesday, the 13th, rendering it impracticable to erect trusses, and on Tuesday night a high wind arose, and blew down that portion of the side walls of the shop B which had been carried up 34 feet, and which had not been covered by the trusses, the portion blown down being of the length of about 180 feet. None of the wall which had been raised only to the height of 26 feet was blown down. The plaintiffs had assembled 19 trusses, sufficient for at least two days' work, but, on account of the defect in the construction of the trusses and clear story frames they were not in a condition to be used in the work, and not available, though at the time the walls were blown down the plaintiffs had a sufficient number of trusses and clear story frames on hand, if they had not been defective, to have performed their contract. The plaintiffs returned this ironwork to the Pencoid Iron Works, where the difficulty was removed, and later in the fall, and in November, 1892, Haven rebuilt the walls, and the plaintiffs erected proper ironwork thereon, and completed their contract. The contract price to be paid the plaintiffs for erecting this ironwork on shops A and B was $53,790.32. No difficulty seems to have occurred as to shop A, and the plaintiffs had been paid that amount, except $13,789.10, for which the lien was created.

As a conclusion of law, the learned trial court found: "(1) That plaintiffs are liable to defendant Haven for damages suffered by defendant Haven because of the failure of plaintiffs to erect the trusses on the walls of erecting shop B as soon as the said walls were in readiness for said trusses, because of which failure said walls were left in an exposed and unprotected condition, and were blown down by the wind. (2) That, the amount of said damages not clearly appearing on the trial, the defendant Haven is entitled to a reference to some referee to be appointed by the court to take proof of and ascertain and determine the amount of damages sustained by him through said failure of plaintiffs to so erect said trusses." The court further found that the damages that were ascertained by a reference should be deducted from the sum remaining due to the plaintiffs on their contract, and the plaintiffs were entitled to recover the balance, if any; and that an interlocutory judgment be entered to that effect.

The other facts essential to be considered appear in the opinion.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and McLENNAN, JJ.

John L. Romer, for appellants.
Adelbert Moot, for respondent.

WARD, J.  This appeal involves the question of the liability of the plaintiffs to respond in damages to the defendant Haven for the destruction of the walls of shop B that were blown down at Depew, Erie county, on the night of September 13, 1892.  The court found that "during the night of Tuesday, the 13th day of September, a high wind or gale arose, and blew down that portion of the side walls of erecting shop B, which had been carried up to the height of thirty-four feet, and which had not been covered by said trusses; the portion blown down being of the length of one hundred and eighty feet."  He also found that the place where the shops were erected is a level, open country, about 10 miles east of Buffalo, where the prevailing winds are from the southwest, and where, in the fall of the year, there are frequent storm winds.  The evidence does not disclose, nor does it seem to be claimed by the learned counsel for the appellants, that this storm was an exceptional one for that locality for that time of the year, but was only such a one as might have been within the contemplation of the contracting parties as likely to occur.  The plaintiffs' notice to the defendant Haven to raise the walls to 34 feet, so that the ironwork could be erected upon them, implied an assurance to Haven that, as soon as the walls were ready, the ironwork would be placed upon them.  The trusses weighed about two tons apiece.  When placed upon the walls, they operated to bind them, and make them firm, and gave them greater capacity to resist the effect of storms.  It was not expected that any bracing of the walls to resist outside forces should occur after the trusses were put upon the walls, and, as Haven had reason to expect that the ironwork would be placed immediately after the walls were raised, it was not negligence in him not to have braced them.  He had taken the precaution to notify the plaintiffs immediately after the first portion of the walls had been raised to 34 feet that the walls were ready for the ironwork, and that there was great danger of injury from the elements in their present condition, and that the ironwork was absolutely necessary for the protection of the walls.  And the trial court had the right to assume that negligence on the part of Haven had in no manner contributed to the destruction of the walls.  The implication in the first notice of Read & Gilman to Haven to raise the walls is strengthened by the second notice, of the evening of September 9th, to continue the raising of the walls to the height of 34 feet, which notice was complied with by Haven immediately.  The notice from Haven, and the two notices to Haven, and the exigency of the conditions surrounding the work made the duty imperative upon the plaintiffs to use all the force necessary to erect the ironwork upon the walls as soon as practicable.  The plaintiffs concededly had the ironwork on the ground, sufficient for that purpose had it been suitable; and with proper machinery, which it was their duty to have, could have completed the work before the disastrous storm that followed.  The walls

were in readiness to commence work at noon on the 9th of September. The rain did not commence until midnight of the 12th of September. The storm occurred 24 hours later. The plaintiffs were not required to work on Sunday, although some work was done on that day; but enough time remained, excluding Sunday, if their ironwork had been in condition for use, to have substantially bound the walls with the ironwork before the rain made the work impracticable. At least there was evidence before the trial court upon which it might reach this conclusion. The plaintiffs' difficulty grew out of the mistake of their employés (the Pencoid Iron Works) in not manufacturing the ironwork so that it could be used in the building; consequently the plaintiffs could not perform their contract, and did not secure the walls from storm. For this mistake Haven was not responsible. If it worked damages to him, he is not called upon to sustain those damages, but can require them of the plaintiffs, whose acts and omissions have caused such damages to accrue.

The appellants insist that their failure to place proper ironwork upon the building was not the proximate cause of the damages; that the proximate cause was the storm, and the plaintiffs' breach but a remote incident. The storm was undoubtedly a concurring cause. But for the storm, the damages would not have occurred; neither would they have occurred but for the failure of the plaintiffs that we have indicated. Two suggestive facts in the case greatly strengthen this view. One is that the portions of the wall that had been raised 34 feet high, that were protected by the seven trusses that had been put upon them, did not go down. The remainder of the wall, that had only been raised 26 feet high, withstood the storm in safety, so that it is almost demonstrated that the cause of the fall of 180 feet of the unprotected wall that had been raised 34 feet high was because it was not protected by the ironwork. As sustaining this view, see Quill v. Telegraph Co., 92 Hun, 546, 34 N. Y. Supp. 470, and 37 N. Y. Supp. 1149; Laible v. Railroad Co., 13 App. Div. 574, 43 N. Y. Supp. 1003, and cases cited.

There is no question about the measure of damages, providing the plaintiffs' responsibility is established. Those damages would be the necessary expense of repairing and rebuilding the walls that were blown down. Haven was bound by contract with the railroad company to have these walls constructed, and his damages are the natural and necessary result of the combined causes to which we have referred.

The appellants also complain that they were hindered in the erection of the trusses by reason of the omission of Haven to remove the staging which had been used to erect the walls. There does not seem to have been any complaint at the time about the staging remaining there, and it may be questioned whether it was not useful in erecting the ironwork. The trouble with the plaintiffs, as we have explained, lies deeper than the staging. If their ironwork had been in a condition to have been used, there would have been no substantial difficulty in the way of the performance of their contract.

Upon the trial, evidence was offered upon both sides of the custom or usage, if any existed, of the masons to brace their walls after

they were constructed, and before the ironwork was placed upon them. The trial court had doubts about receiving this evidence, but by consent of the parties it was received upon the condition that the court might strike it out in its decision of the case, and, if so, would give the defeated party an exception. We have examined this evidence. It is unsatisfactory and conflicting as to the existence of any custom upon the subject, and, if any custom were shown, it does not seem applicable to the conditions of this case. The trial court struck out the evidence, and rejected it, and gave the plaintiffs an exception, which is here for review. We have shown that it was a matter of contract and duty, under the circumstances of this case, for the plaintiffs to put the ironwork upon the walls at once upon notice that they were ready, which was not done. The evidence of custom, therefore, in such a case, is immaterial, as such evidence cannot be given to overthrow a contract, or dispense with the performance of an absolute duty devolved upon a contracting party. Holmes v. Pettingill, 60 N. Y. 646; Markham v. Jaudon, 41 N. Y. 234; Whart. Ev. (3d Ed.) § 958, and cases cited in note 3; Thomson v. Poor, 147 N. Y. 402, 42 N. E. 13. The custom or usage claimed in this case was for the purpose of showing negligence in Haven for not bracing the walls. We have shown that that duty, in the circumstances, did not devolve upon him. The evidence of custom or usage is of no value in the case, and we think the trial court was justified in rejecting it altogether.

The appellants also urge that, where no time is mentioned for the performance of the contract, the law annexes to that contract the condition that the party has a reasonable time within which to perform it. This is a reasonable rule, and applicable to contracts generally; but what is a reasonable time must be governed by the circumstances of each case, and we have shown in this case that the plaintiffs' duty to erect the ironwork was immediate and absolute.

We find no reversible error in the proceedings below, and the interlocutory judgment should be affirmed, with costs, and that the reference ordered thereby should proceed to ascertain the amount of the damages. All concur.