### JONES v. MILLER et al.
### Appeal of MILLER.
### No. 10937.

United States Court of Appeals
Third Circuit.

Argued March 5, 1953.

Decided March 25, 1953.

132

William J. Kenney, Pittsburgh, Pa., Grover C. Ladner, Philadelphia, Pa. (Rose, Rose & Houston, Pittsburgh, Pa., Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., on the brief), for appellant.

James R. Orr, Pittsburgh, Pa. (Carl E. Glock, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief), for appellee.

Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is an appeal from a judgment for plaintiff in a suit for damages claimed to have been sustained as a result of defendant's failure to honor his lien. The cause was tried to the court without a jury. Jurisdiction is grounded on diversity of citizenship.

The undisputed evidence shows that Jones, a practicing attorney and resident of West Virginia, has had an office in Wheeling since 1913. S. A. Williams, a nonpracticing attorney who was engaged in the purchase and sale of coal lands, used Jones' office as his headquarters and, save for a short period when Jones served in World War I, retained him in many matters from 1913 until Williams' death in 1934. In 1924 Jones represented Williams in negotiations

for the sale and exchange of certain coal lands which led to the execution of a contract with one B. F. Hoffacker. The latter defaulted under the contract and Jones brought suit against him in West Virginia on behalf of Williams. A judgment was obtained but was not satisfied. Thereafter it was decided to institute an action for breach of contract against Hoffacker's undisclosed principal, Pittsburgh Terminal Coal Corporation, in the United States District Court for the Western District of Pennsylvania. Miller & Nesbitt, a Pennsylvania law partnership, was retained to represent Williams. The suit was begun on December 31, 1931, was tried twice in the district court and appealed three times to this court. Two petitions for certiorari were denied by the Supreme Court. On the first appeal Grover C. Ladner of the Philadelphia bar was brought in as co-counsel and remained in the litigation to its conclusion.

The second trial resulted in a judgment for Williams in the amount of some $142,000. On July 4, 1934, while re-argument on the appeal from the judgment was pending in this court, Williams died. His administratrix retained an attorney who arranged to continue the services of Miller & Nesbitt, as well as those of Ladner. After the litigation had been successfully concluded the administratrix gave Miller & Nesbitt written authorization to collect the judgment. Of the approximately $130,000 collected by May 9, 1935, Miller & Nesbitt retained over $40,000 for themselves for fees and expenses arising out of the litigation and, in addition, paid Ladner more than $11,000, all without the prior approval of the Orphans' Court of Indiana County, which had jurisdiction over Williams' estate.

Prior to September 28, 1935, plaintiff filed a lien claim against the Williams estate in the Orphans' Court in the amount of $10,095 for professional services and disbursements between 1925 and 1935. The lien was disallowed but he was given the status of a general creditor, the auditor finding that $10,095 represented a reasonable fee for Jones' services to Williams in the Hoffacker-Pittsburgh Terminal suits.[1] Since the estate was insolvent Jones received payments totalling ony $6,800.16, the final payment being made on August 31, 1940. In the meantime, however, plaintiff had notified Miller & Nesbitt by letter dated September 28, 1935, that he claimed "a lien upon the funds now in your hands or hereafter coming into your hands by way of collection of said judgment" because of services rendered in the litigation in which he participated as co-counsel. In another letter dated December 13, 1935, he claimed "a lien or right of defalcation."

Miller & Nesbitt failed to honor plaintiff's asserted lien although the uncontroverted evidence is that after receiving notice thereof they had or came into the possession of sums of money, representing payments on the judgment, far in excess of plaintiff's claim. Instead, all such moneys, other than those which were used to pay their own fees and disbursements and those of Ladner, were transmitted to representatives of the Williams estate. They did, however, pay plaintiff a total of $1,100 from February, 1935, to June, 1940, supposedly in satisfaction of his claims. Plaintiff's judgment below was for $2,194.84, the difference between his claim of $10,095 and the various payments made to him by the Orphans' Court and Miller & Nesbitt.

The complaint in the present suit was filed July 18, 1942, but the case was not tried until late in 1951. Nesbitt, meanwhile, died in 1948 and during the course of the trial the complaint was dismissed as to him.

■ Appellant argues that Jones did not have a charging lien (also known as a right of defalcation) because under the applicable Pennsylvania law such lien exists only in favor of the attorney into whose hands come funds belonging to his client. This

---

1. The court below also treated plaintiff's claim for fees in the Hoffacker and Pittsburgh Terminal matters as a unit. While defendant notes that Jones' services in the former suit were more extensive than in the latter he does not seriously urge that his lien is limited to a fee for services in the Pittsburgh Terminal suit.

argument is premised on the assumption, which we find unwarranted, that Jones in his letters of September 28 and December 13, 1935, claimed only a charging lien. Appellee concedes that he was not entitled to a charging lien but insists he had a retaining lien in any proceeds in the hands of Miller & Nesbitt after they had notice of his claim. We are in accord with the views of the trial court that Jones impressed a retaining lien on such funds and deem of no importance the fact that the wording of his claim was broad enough to include a charging lien.

■ Miller seems to agree that Jones was entitled to the benefits of a retaining lien if he had been co-counsel in the Pittsburgh Terminal litigation, but denies that he had such status. While the district judge did not expressly find that Jones was co-counsel, he did find that Williams retained him as counsel, that he intended and expected him to continue to represent him to final judgment, that Jones performed legal research and conferred with the other counsel concerning both trial and appellate strategy, that he continued to advise Williams in connection with the litigation until Williams' death and that he was Williams' key witness in the trial of the case.[2] Moreover, in one of his conclusions of law the trial judge stated that the $1,100 paid by defendant to plaintiff did not discharge the obligation of defendant *as co-counsel* to protect plaintiff's lien. In addition, the finding that Jones was co-counsel is implicit in the holding that Jones had a retaining lien in the funds which came into appellant's hands. A review of the record does not convince us that the trial judge was clearly wrong in impliedly finding that Jones was co-counsel.

■ Appellant contends that irrespective of the existent status before Williams' death, the latter event concluded plaintiff's connection with the Pittsburgh Terminal suit. Generally speaking, the death of the client terminates the attorney-client rela-

tionship. However, a well-recognized exception is the situation in which the client has agreed to have the attorney conduct the litigation to judgment or conclusion. Stewart Estate, 1948, 358 Pa.434, 58 A.2d 42. As noted, the trial court found the existence of such intent on the part of Williams. We agree with appellee that in this posture of the case it would at the very least have required an affirmative act on the part of Williams' administratrix to supersede Jones as co-counsel. The most that appellant has been able to show is that the administratrix took no steps either to re-appoint or discharge Jones.

■ It is next urged that the decision of the Orphans' Court denying plaintiff a lien is res judicata here. This argument is without merit for two reasons. In the first place, the identities necessary for the application of this doctrine do not exist. The parties are not the same and the cause of action is different, to mention only two elements which are absent. In the Orphans' Court the claim was against the estate, while here it is against a lawyer; the former claim was to enforce a lien, here damages are sought for failure to honor a lien. Res judicata is clearly inapplicable. American Surety Company of New York v. Dickson, 1942, 345 Pa. 328, 28 A.2d 316. There is, moreover, an even more compelling reason to disregard the Orphans' Court's disallowance of Jones' lien claim. Appellant points out that the auditor denied Jones both a charging lien and retaining lien. He fails to mention that this official specifically stated that Jones could have no lien because the funds sought to be charged were in the hands of the administratrix and not in the hands of Miller & Nesbitt. A retaining lien being possessory, of course it could not be enforced after possession had been relinquished. The instant suit was brought to recover damages for failure to protect plaintiff's retaining lien in funds in the hands of defendant at or after notice of the lien claim had been

2. It was for this reason, says Jones, that he could not take a more active part in the trial. Appellee also points out that he was listed as counsel for Williams in

the first appeal to this court, Williams v. Pittsburgh Terminal Coal Corporation, 3 Cir., 1933, 62 F.2d 924.

**given.** Miller & Nesbitt and Ladner, as has been suggested, certainly had no difficulty realizing *in toto* on their claims against the estate.[3] Since defendant concededly had more than enough funds after notice to satisfy Jones' claim and subsequently released them to the estate to Jones' detriment, it follows that Jones was entitled to such damages as would make him whole.

Appellant's other contentions have been considered and found to be without substance.

The judgment will be affirmed.

3. This fact points up appellant's anomalous position in arguing that if he had not turned over all of the proceeds of the Pittsburgh Terminal judgment to the estate, even after receipt of plaintiff's lien notice, he would have been held to account by the Orphans' Court.