Hillsborough
No. 86-348

JOSEPH AND ESTHER ROSS

v.

EDWARD AND SALLY JO EICHMAN

July 10, 1987

*Law Offices of Robert J. Moses*, of Amherst (*Robert J. Moses* on the brief and orally), for the plaintiffs.

*Spaloss & Rosson*, of Nashua (*Henry F. Spaloss* on the brief and orally), for the defendants.

JOHNSON, J.  This appeal is from a ruling by the Trial Court (*Dalianis*, J.) that the purchase and sale agreement between the plaintiffs and the defendants was null and void. We reverse and remand.

On October 7, 1985, the plaintiffs, Joseph and Esther Ross (buyers), entered into a purchase and sale agreement with the defendants, Edward and Sally Jo Eichman (sellers), for the purchase of the sellers' home in Nashua. The agreement contained a pre-printed financing contingency provision which stated that unless the buyers could obtain financing in the amount of $79,000 by November 27, 1985, the agreement would be null and void. If the buyers could not obtain financing they were entitled to a return of their deposit. The transfer of title was to take place on or before April 1, 1986.

All of the parties to the proposed transaction were aware that the buyers had chosen to purchase the sellers' home because the buyers had children with special needs. The home was located in the "Bicentennial School District" in Nashua, which has programs specifically designed to aid these children with special needs.

Anne Jones, a real estate broker, learned that the sellers had at one time placed their home on the market for sale but had later withdrawn it from the market. The trial court found in its decree that the broker, "working on behalf of the plaintiffs [buyers] . . . persuaded the defendants [sellers] to give her [Jones] a five-day exclusive listing." This listing agreement dated October 3, 1985, called for the sellers to pay Jones a commission of six percent of the sales price and created a relationship in which the Eichmans were the principals and Jones was their agent.

Working under this listing agreement, Jones had the buyers and sellers sign a "sales agreement and deposit receipt" on October 7, 1985, witnessed by Jones, which declared, "[t]he parties hereto agree that Anne Jones Real Estate brought about this sale *as agent of SELLER[S]* Edward and Sally Eichman." (Emphasis added.) The trial court, in its specific findings of fact, found that the buyers were introduced to the sellers' property while the broker was "acting in behalf of the Defendants [sellers]."

The broker was in contact with the buyers prior to the November 27, 1985 financing deadline regarding the status of the buyers' financing. Mr. Ross informed her that they had shopped around for a mortgage, but no financing institution would guarantee a specific rate for a note, and that they would pay cash at the closing if they were unable to find satisfactory financing.

The sellers asserted that because the buyers had not satisfied the financing clause the sale was null and void. The buyers insisted that the contract was valid and appeared at the proposed place of closing with sufficient cash to pay the agreed-upon purchase price. The sellers refused to perform, and the buyers sued for specific performance.

The issues presented by the buyers can be summarized as follows: (1) whether the trial court erred in not binding the sellers to an agency relationship with their broker; (2) whether the trial court erred in denying the buyers' petition for specific performance; and (3) whether the trial court erred in not allowing evidence of damages. We find that the trial court erred, reverse the decision and remand for further findings consistent with this opinion.

We first address the issue of whether the buyers' statements to the broker were binding upon the sellers. The trial court specifically found that the buyers told Jones in a timely fashion that they would be prepared to close on a "cash deal" basis, whether conventional financing was obtained or not.

According to well-settled law in New Hampshire, this notice to the sellers' agent that the buyers were waiving the protection granted them under the financing clause was equivalent to notice to the sellers. *Rowe v. Company*, 86 N.H. 127, 130, 164 A. 761, 762 (1933) (notice to an agent acts as notice to the agent's principal). Hence, there was no need for the buyers to give confirmation personally to the sellers no later than November 27, 1985, that institutional financing had been obtained.

We next address the issue of whether the trial court erred in denying specific performance to the buyers. The court based its denial on the buyers' failure to comply with the financing contingency. In *Leavitt v. Fowler*, 118 N.H. 541, 391 A.2d 876 (1978), we held that it was not necessary for a buyer to obtain the specific financing that was set out in the agreement. Rather, as long as the buyers were able to obtain financing and were able to close the transaction, specific performance was properly granted. In that case, it made no difference to the seller where the financing came from, and the court found that the financing clause existed for the

benefit of the buyer and that the buyer was able to waive this provision.

■■ In *Chute v. Chute*, 117 N.H. 676, 377 A.2d 890 (1977), we held that specific performance is the usual remedy to enforce contracts for the sale of land unless there are "significant equitable reasons for refusing to grant" it. *Id.* at 678, 377 A.2d at 891. Thus, the court should have granted specific performance unless there was a particular reason not to, rather than requiring a reason to grant it.

The trial court's decree that "the contract was voided" because of the failure of the buyers to confirm the specific financing "as required by the contract" was error because the buyers had the power to waive the financing clause, since it was for their protection, and they waived it by notice to the sellers' agent. *Bruyere v. Jade Realty Corp.*, 117 N.H. 564, 375 A.2d 600 (1977). In *Bruyere*, we held that "the intent of the financing clause is to protect the *buyer* from involuntary breach." *Id.* at 566, 375 A.2d at 601 (emphasis added).

The sellers argue that the financing provision was for the protection of the sellers, since without the assurance that there would be an institutional lender, the sellers would be relying upon the credit of the buyers until the date of closing. If the sellers had wanted to protect themselves they merely had to make this clear by adding a provision to the contract *requiring* that an institutional lender be committed to the buyers by a date certain.

■ The last issue before us is whether the trial court should have allowed evidence of damages to be introduced by the buyers. We hold that the trial court erred and should have allowed the damages evidence. "Denial of the relief sought does not necessarily bar the right to damages at law." *Johnson v. Korsak, Inc.*, 120 N.H. 412, 416, 415 A.2d 1141, 1143 (1980). Thus, even though the trial court denied specific performance, it should also have considered that the buyers might be entitled to damages. The reason for this was stated in *Sullivan v. Dumaine*, 106 N.H. 102, 205 A.2d 848 (1964). Once a court acquires jurisdiction, "equity will give complete relief rather than forcing the parties to the delay and expense of a new trial." *Id.* at 105, 205 A.2d at 850 (citing, *inter alia*, *Barber v. Somers*, 102 N.H. 38, 43, 150 A.2d 408, 412 (1959)). In denying the buyers an opportunity to present damages evidence, the trial court was effectively requiring the parties to institute a new suit, contrary to notions of judicial economy.

*Reversed and remanded.*

All concurred.