Strafford County Probate Court
No. 86-470

## *In re* ESTATE OF ELLA A. KELLY

August 8, 1988

*Upton, Sanders & Smith,* of Concord, and *Luke S. O'Neill, Jr.,* of Manchester (*Russell F. Hilliard, Gilbert Upton* and *Mr. O'Neill* on the brief, and *Mr. Upton* orally), for the petitioners, Diana Atkins *& a.*

*McNeill, Taylor & Dolan P.A.,* of Dover (*Malcolm R. McNeill, Jr.,* and *Edwinna C. Vanderzanden* on the brief, and *Mr. McNeill* orally), for the petitionee, John McDonald, Administrator d/b/n.

THAYER, J. This is an appeal from an October, 1986, decree of the Strafford County Probate Court (*Cassavechia*, J.) which denied the petition of Diana Atkins *& a.* asking to reinstate a five-year will contest, to vacate the probate court's appointment of the successor administrator of the estate, and to set aside a settlement negotiated by the parties' attorneys in January, 1986. We reverse.

The issues raised on appeal are: (1) do the petitioners have standing to appeal; (2) did petitionee's attorney have authority to settle the case; (3) was the appointment of the administrator *de bonis non* (d/b/n) valid; and, if so, did he ratify the settlement between the parties; and, finally, (4) did petitionee's attorney willfully conceal a material fact so as to induce the petitioners to settle?

There is no serious dispute as to the essential facts before us. In January, 1982, Ella Kelly died. She left $10,000 in a testamentary trust to her grandchildren, who are the petitioners (hereinafter referred to as "petitioners" or "heirs"), to be distributed when the last of them reached the age of 35. She bequeathed the bulk of her estate to charity and to Mary McDonald, her niece and appointed executrix. Within a few months of Mrs. Kelly's death, the petitioners commenced a long and tortuous will contest, the procedural history of which is as follows.

In January, 1982, the will was proved in "common form." Shortly thereafter, the petitioners filed a petition to re-examine the probate of the will and to have it proved in "solemn form." They also requested that certain issues be certified to the superior court for jury trial.

In October, 1983, the probate court denied the heirs' request for a jury trial. They appealed that decree to this court, and we affirmed the probate court's denial of a jury trial in *Petition of Atkins*, 126 N.H. 577, 493 A.2d 1203 (1985). The heirs then petitioned the probate court to reopen the hearing on their first petition for a jury trial, for the purpose of introducing proof that material facts were in dispute concerning the proof and validity of the will.

In September, 1985, the Probate Court (*Shea*, J.) denied the motion to reopen the petition for a jury trial and proceeded to hear the will contest without a jury. The court entered a decree in October, 1985, affirming the earlier proof of the will in "common form" and denying the petitioners' challenge to the validity of the will. In November, 1985, the heirs appealed that ruling to this court. After we accepted the appeal, the heirs entered into an apparent settlement agreement, and withdrew the appeal.

Prior to September, 1985, some attempts at the settlement of the will contest had been made. The petitioners offered to compromise the settlement for $125,000. This offer was rejected by the executrix, who then responded with a counter-offer of $30,000 (the $10,000 in trust for the petitioners, plus $5,000 extra per grandchild). This counter-offer, in turn, was rejected by the petitioners. Negotiations then ceased. The executrix, being the residual legatee, would have the amount she was to take under the will directly affected by any increase in monies given to the grandchildren and, therefore, in addition to being the executrix, she was the principal adverse party to the petitioners.

In January, 1986, negotiations were reopened. The petitioners made an initial demand of $50,000 ($40,000 plus the $10,000 bequeathed to them). Malcolm R. McNeill, Mary McDonald's lawyer, communicated this demand to Mrs. McDonald's husband, since Mrs. McDonald was in a Florida hospital, and had been since December 30, 1985. During this period, all communication by Mr. McNeill was with Mr. McDonald, acting as the intermediary between McNeill and his client. At no time during this period did McNeill speak directly to Mrs. McDonald about either her husband's authority as intermediary or the negotiations. On January 17 and 22, McNeill did, however, try to confer directly with Mrs. McDonald, but he was told by her doctor that to do so would adversely affect her health.

The rejection of the $50,000 demand was communicated to McNeill by Mr. McDonald, who testified that he had discussed the $50,000 settlement with his wife and that she had commented, "I don't care. Settle it." McNeill and Mr. McDonald then made a counter-offer of $40,000. According to testimony by Mr. McDonald, he had informed his wife of that counter-offer, and she had agreed to it. Testimony showed that Mrs. McDonald had given her attorney "broad authority" to settle the issue.

On January 22, 1986, the petitioners agreed to the $40,000 counter-offer. In response, McNeill said he wanted written authority from Mrs. McDonald before the case could be settled. The petitioners, in turn, filed a motion with this court requesting an extension of the time for payment of transcript costs for their then-pending appeal and represented that the matter was settled by the parties subject only to the "receipt of written authorization from . . . [Mary McDonald]."

Four days later, on January 26, 1986, Mary McDonald died, before ever giving written consent to the January 22 agreement. Four days after her death, on January 30, 1986, McNeill told the petitioners that the case was settled.

In February, 1986, John McDonald was appointed administrator d/b/n by the Strafford County Probate Court. No personal notice of appointment was given to the petitioners, but notice was published pursuant to RSA 553:16. John, as appointed administrator, distributed $30,000 of the $40,000 settlement to the petitioners. The petitioners did not learn either of Mrs. McDonald's death or of John's appointment until the latter part of April, 1986, after which they petitioned for reinstatement of the will contest and to set aside the settlement. They have also moved to vacate the appointment of the administrator d/b/n, for the purpose of preventing a ratification of the agreement, all of which will place them in the procedural posture they occupied prior to January 22, 1986, with the added advantage, as they see it, of not having the testimony of the real party in interest.

Since the first two issues raised are dispositive of the claim before us, we do not reach the remaining issues raised by the petitioners.

■ The first issue we examine is whether the petitioners have standing. The probate court framed the issue in terms of standing to challenge the authority of the McNeill/McDonald relationship, and thus found that the petitioners did not have standing. However, the focus of the standing issue is not the relationship between petitionee's attorney and his client, but the rights of the heirs in contesting an issue that affects their inheritance.

■ "The right of a contestant to . . . attack the probate of a will . . . exists by . . . statute and is entirely dependent on statute." 80 AM. JUR. 2d *Wills* § 891, at 77 (1975). RSA 567-A:1 (Supp. 1987) allows "[a] person who is aggrieved by a decree, order, appointment, grant or denial of a judge of probate which may conclude that person's interest in a matter before the court [to] appeal . . . to the supreme court . . . ." *Accord Bryant v. Allen*, 6 N.H. 116, 117–18 (1833) (any person whose rights may be affected by a probate decree may appeal).

■■ "The general rule is that an aggrieved person under [the] statute[ ] . . . is one who has a direct pecuniary interest in the estate of the . . . testator which will be impaired if the instrument in question is held to be a valid will." W. TREAT, 3 NEW HAMPSHIRE PRACTICE, PROBATE LAW § 1037, at 62 (1968). Furthermore, the "interest which [the] person must possess . . . is such that if he

prevails in the contest he will be entitled to a distributive share in the testator's estate." *Id.* In other words, a will contestant must generally have some direct legal or equitable interest in the decedent's estate. *Id.; accord* 80 AM. JUR. 2d *Wills* § 891, at 77; *Swan v. Bailey*, 84 N.H. 73, 74, 146 A. 89, 89 (1929).

■ Generally, persons who have a direct legal or equitable interest in the estate are heirs, creditors or legatees under a prior will. *See Green v. Foster*, 104 N.H. 287, 289, 184 A.2d 448, 449 (1962). The term heir "applies to those who take by reason of blood relationship" or "persons who would take the estate under the statute of distribution." *Richardson v. Martin*, 55 N.H. 45, 46 (1874) (Cushing, C.J.). RSA 561:1, which provides for intestate distribution, and RSA 21:20, which defines "issue" as all "lawful lineal descendants of [an] ancestor," make it clear that petitioners are heirs.

■ We conclude that the petitioners are heirs, and that their pecuniary interests under the will are affected by the order of the probate court. We therefore hold that they have standing to appeal.

The second issue we examine is whether petitionee's attorney had the authority to effectuate settlement. The probate court ruled that there was "no compromised agreement reached *before* Mrs. McDonald's death." According to the probate court, the time of the settlement was January 30, when McNeill reconfirmed the petitionee's acceptance. This was four days after Mary McDonald had died. The probate court further found that "[t]hough it was by personal choice rather than legal necessity that Mr. McNeill did not accept the claimants' offer [*sic*] prior to Mrs. McDonald's death, her death did serve to terminate his actual authority to act for her individually and as fiduciary of [her] estate." However, although the probate court found no actual authority to effectuate the settlement, it found that "Mr. McNeill did have apparent authority" to conclude the settlement and having done so, the settlement was binding on the heirs.

The petitioners argue that actual, as well as apparent, authority terminates with the death of the principal and that McNeill, on January 30, had no authority to conclude the agreement. In turn, petitionee argues that actual and apparent authority existed at the time the heirs accepted the counter-offer of $40,000 on January 22. The petitionee further argues that the agreement between the executrix and her attorney was such that it continued after her death.

■ The petitionee acknowledges the general rule that "death or loss of capacity of [the principal] destroys authority . . . ." SEAVEY, HANDBOOK OF THE LAW OF AGENCY § 48, at 88–89 (1964); *accord Sibley Oil Co. v. Stein*, 100 N.H. 356, 357, 126 A.2d 252, 253 (1956); *Wilson v. Edmonds*, 24 N.H. 517, 547 (1852); *Gale v. Tappan*, 12 N.H. 145, 147–48, 37 AD 194, 196 (1841); RESTATEMENT (SECOND) OF AGENCY § 133, at 331 (1958) ("[t]he apparent authority of an agent terminates upon the happening of an event which destroys the capacity of the principal to give the power, or an event which otherwise makes the authorized transaction impossible"); RESTATE-MENT (SECOND) OF AGENCY § 120(1), at 304 ("the death of the principal terminates the authority of the agent . . . except as stated . . . in the caveat"); H. RUESCHLEIN & W. GREGORY, AGENCY & PARTNERSHIP § 45, at 86–87, § 46, at 92 (1979); 3 AM. JUR. 2d *Agency* § 55, at 555 (1986); *Fariss v. Lynchburg Foundry*, 769 F.2d 958, 962 (4th Cir. 1985).

However, given the circumstances of this case, the petitionee urges us to adopt a narrow exception to Restatement (Second) of Agency § 120 based on the caveat therein which states that "[n]o inference is to be drawn from the rule stated in this Section that an agent does not have power to bind the estate of a deceased principal in transactions dependent upon a special relation between the agent and the principal . . . ."

■ It is true that certain exceptions exist to the general rule. "It is a well-settled general rule that if the authority or power of an agent is coupled with an interest, it is not revocable by . . . death of the principal . . . ." 3 AM. JUR. 2d *Agency* § 63, at 564. A minority of jurisdictions further recognize an "attorney exception" where the "contract of employment is by its terms to continue thereafter [or] where the attorney is specifically retained to conduct the case to judgment or conclusion . . . ." 7A C.J.S. *Attorney & Client* § 224, at 405 (1980); *Jones v. Miller*, 203 F.2d 131, 134 (3rd Cir.), *cert. denied, Miller v. Jones*, 346 U.S. 821 (1953) (client agreed to have attorney conduct litigation to conclusion); *Coleman v. Durden*, 338 A.2d 570 (Del. Sup. Ct. 1975) (authority extends beyond death where deceased client does not retain control of attorney); *Williams v. Patterson Anc. Adm.*, 240 Mo. App. 131, 155–56, 218 S.W.2d 156, 169–70 (1949) (authority exists beyond death, where attorney has contract and vested right).

■■ On the facts before us, we do not find the "authority coupled with an interest" exception applicable, nor do we follow the jurisdictions which extend agency beyond death of the principal for

other reasons. First, there was no authority coupled with an interest here. *See Davis v. Lane,* 10 N.H. 156, 157–58 (1839) (authority terminates at death, unless coupled with an interest; insanity acts as revocation). Such authority consists of a power of attorney given as a security, or a situation in which the attorney would derive a present or future interest in the subject matter of the agency, or where he would receive title (equitable or legal) to all or part of the subject matter. *See* 3 AM. JUR. 2d *Agency* §§ 64–70, at 565–74. It is undisputed that McNeill possessed none of these interests.

Second, the record does not show a contract between McNeill and his client which would allow such an extension. The record does show that Mary McDonald retained Mr. McNeill to represent her as sole residual legatee and as executrix and, thus, arguably retained him to conduct the case to conclusion or judgment. *See Jones v. Miller supra.* However, even if such is the case, and although New Hampshire favors settlements of disputes, our cases have yet to allow an exception allowing authority to exist beyond death where an attorney is specifically retained to conduct the case to conclusion. We will not extend our law under these facts, particularly since the agent knew that the death of the executrix would have a substantial bearing on the posture of the case, as it related to the executrix personally, but not necessarily to the estate.

We disagree with the probate court and agree with the heirs that McNeill's authority terminated at the death of Mary McDonald and that there was thus no authority, actual or otherwise, on January 30 to complete the settlement. We base this conclusion on the facts surrounding the transaction that occurred between the parties on January 22. We agree with the petitionee that as of January 22, before Mary McDonald's death, McNeill had authority to effectuate an agreement. It is also true that as of January 22, when the petitioners accepted the petitionee's counter-offer, McNeill had apparent and arguably actual authority; his principal was still alive and, according to Mr. McDonald's testimony, accepted by the probate court under New Hampshire Rule of Evidence 804(b)(3), had acquiesced to the $40,000 settlement.

However, the demand by Attorney McNeill for written confirmation, though a matter of his own professional prudence and not required by his principal, prevented the January 22 acceptance of his counter-offer from being binding at the time because the written confirmation was made a condition precedent to the settlement, a condition precedent that required action by the executrix. At oral argument, Attorney McNeill conceded that the

heirs were not bound by the agreement until Mrs. McDonald gave written authorization, although he believed he could waive the condition at any time.

 "Conditions precedent . . . are those facts and events, occurring subsequently to the making of a valid contract, that must . . . occur before there is a right to . . . performance." 3A A. CORBIN, CORBIN ON CONTRACTS § 628, at 16 (1960); *see generally Makris v. Nolan*, 115 N.H. 135, 335 A.2d 655 (1975) (phrase "subject to" in financing agreement is a condition precedent to purchasing real estate).

 Conditions in contracts are construed in accordance with their ordinary meaning. "A proviso in a contract creates a condition, in the absence of anything in the contract to show that such was not the intention of the parties, and the employment of such words as . . . 'subject to' usually indicates that a promise is not to be performed except upon a condition or the happening of a stated event." 17 AM. JUR. 2d *Contracts* § 320, at 749 (1964); 3A A. CORBIN, CORBIN ON CONTRACTS § 639, at 55. As a general rule, conditions precedent are not favored, and we will not so construe such conditions unless required by the plain language of the agreement. 17 AM. JUR. 2d *Contracts* § 321, at 752. This settlement agreement, by its own terms, makes the performance of the settlement conditional. *See Dimick v. Lewis*, 127 N.H. 141, 144, 497 A.2d 1221, 1223 (1985) (settlement by its terms found to be conditional).

Although New Hampshire favors settlements of disputed claims, particularly those which are beneficial to the estate, *Wyman's Appeal*, 13 N.H. 18, 20 (1842); *Cities Service Oil Co. v. Coleman Oil Co., Inc.*, 470 F.2d 925, 929 (1st Cir.), *cert. denied, Coleman Oil Co., Inc. v. Cities Service Oil Co.*, 411 U.S. 967 (1973); *McIsaac v. McMurray*, 77 N.H. 467, 471, 93 A. 115, 118 (1915), and although we have acknowledged an attorney's authority to make binding settlements for his or her clients, *Manchester Housing Authority v. Zyla*, 118 N.H. 268, 269, 385 A.2d 225, 226–27 (1978); *Eida v. Stoddard*, 111 N.H. 123, 125, 276 A.2d 12, 13 (1971); *cf. Ducey v. Corey*, 116 N.H. 163, 164, 355 A.2d 426, 426 (1976), we hold, on the facts before us, that although the contract was formed on January 22, subject to a condition precedent, the settlement between the parties never became binding since the condition was not fulfilled.

■ McNeill further argues that he can waive his self-imposed condition precedent even after his client's death. He cites us to *Ross v. Eichman*, 129 N.H. 477, 529 A.2d 941 (1987) for this proposition. In *Eichman*, we found that buyers had the power to waive a financing clause because it was included in the contract for their protection. *Id.* at 480, 529 A.2d at 943–44. In our case, however, the party in whose favor the condition precedent was made died before her agent waived the condition, and her death terminated his authority to do so.

■ In sum, we hold that the condition precedent in the settlement agreement had not been met at the time of Mrs. McDonald's death and that the principal's subsequent death prevented her attorney from binding the estate.

*Reversed.*

All concurred.