Rockingham
No. 89-298

ROBERT E. BAILEY AND JOANN W. BAILEY

v.

JOSEPH A. MUSUMECI

June 5, 1991

*Law Offices of Earl L. Kalil, Jr.*, of North Hampton (*Earl L. Kalil, Jr.*, and *Robert G. Wines* on the brief), by brief for the plaintiffs.

*Charles F. Dalton, Jr.*, of Andover, Massachusetts, by brief for the defendant.

THAYER, J. The plaintiffs appeal the Superior Court's (*Dunn,* J.) denial of their petition for specific performance of a purchase and sale agreement relating to a certain parcel of land in Northwood. The plaintiffs-sellers allege that the defendant's unilateral mistake in bidding for the parcel at an auction cannot relieve him of his contractual obligations, and that specific performance is appropriate in light of the defendant's careless conduct surrounding the auction and agreement to purchase the land. The plaintiffs claim, further, that they are entitled to damages, in addition to the $2050 awarded, for their reasonable reliance upon the contract. For the following reasons, we affirm the trial court's decision.

The dispute arose in the following manner. On June 26, 1987, Mr. Musumeci travelled to Northwood to view and assess a tract of land that he had read about in a real estate auction brochure. He found a lot on Old Pittsfield Road ("Pittsfield lot") in Northwood with a sign on it that read "auction" but contained no tract identification number. At the auction the next day, twenty-three parcels of land were auctioned off by a professional auctioneer. Exhibit boards were on display showing the subdivision plans of each lot. There were also maps in brochures, like the brochure previously mentioned, illustrating the location of the various lots. Mr. Musumeci was the highest "absolute" bidder on a tract of land, numbered 6-27-07, located on Old Turnpike Road ("Turnpike lot") in Northwood. Both the Turnpike lot and the Pittsfield lot are north of Route 4, south of Jenness Pond, and west of the Long, Durgin and Little Bow Ponds.

Within thirty to forty-five minutes after placing his winning bid, Mr. Musumeci signed a purchase and sale agreement for the Turnpike lot. After the auction had ended, he went to view the property he had just purchased. When the defendant saw the property, however, he realized that he had mistakenly bid on the wrong lot. Mr. Musumeci immediately returned to the auction site, explained his mistake and requested that his $5,000 deposit be returned to him. The Baileys refused to return the deposit, and they did not attempt to hold another auction to sell the property despite Mr. Musumeci's offer to pay the costs of doing so. Instead, the Baileys brought a bill in equity against the defendant seeking specific performance of the purchase and sale agreement and the recovery of damages.

The trial court found that Mr. Musumeci "exercised due care in his attempt to ascertain the tract of land he was to bid on at the auction" and that "the circumstances that exist here make it inequitable for it to grant specific performance in the plaintiffs' favor." Furthermore, the trial court attributed Mr. Musumeci's mistake to a variety of factors, "including the fact that the Pittsfield tract did not have a sign containing a corresponding tract number," and the fact that the two lots were in close proximity to each other. Although the trial court denied the plaintiffs' request for specific performance, they were awarded damages in the amount of $2050 incurred in paying their attorney.

On appeal the plaintiffs claim that the trial court erred in failing to apply the four-pronged test for unilateral mistake established in *Curran Company v. State*, 106 N.H. 558, 560, 215 A.2d 702, 703–04 (1965). The Baileys also challenge the court's consideration of parol evidence as to Mr. Musumeci's subjective intent, despite the absence of any ambiguity in the contract. Furthermore, the plaintiffs challenge the trial court's factual findings on the basis that (1) no reasonable fact finder could have determined that the defendant exercised due care; (2) the evidence does not support the finding that specific performance would be inequitable in this case; and (3) the court failed to consider all the available evidence when it granted only the plaintiffs' attorney's fees as damages. For the following reasons we affirm the trial court's ruling.

■ The trial court was not bound by the holding in *Curran*, because that case involved a very different procedural posture than the case now before us. In *Curran*, the plaintiff-contractor mistakenly submitted a bid on a public contract which was $100,000 too low because of an adding machine malfunction. 106 N.H. at 559–60, 215 A.2d at 703. The contractor sought rescission of the contract based on his unilateral mistake. The court agreed and held that equity will rescind a contract for unilateral mistake when certain criteria are met. *Id.* at 560, 215 A.2d at 703–04. In contrast, the case before us does not involve a claim that the purchase and sale agreement should be rescinded. Rather, the trial court considered the defendant's unilateral mistake as evidence which factored into its decision not to grant specific performance. When a party claims mistake as one of the factors weighing against a petition for specific performance, rather than as grounds for rescission of the contract, the four criteria established in *Curran* need not be met. *See* E. FARNSWORTH, CONTRACTS § 12.7, at 869–70 (2d ed. 1990).

 We do not find the trial court's consideration of Mr. Musumeci's mistake to be an abuse of its broad equitable powers. *See N.H. Donuts, Inc. v. Skipitaris,* 129 N.H. 774, 783, 533 A.2d 351, 355–56 (1987). Although specific performance of a contract for the sale of land is a remedy available to either the seller or the buyer, *see Eckstein v. Downing,* 64 N.H. 248, 258, 9 A. 626, 628 (1886), the circumstances which entitle a seller of land to specific performance are generally limited. *See* 5A A. CORBIN, CORBIN ON CONTRACTS § 1145 (1964). For instance, where a mistake has occurred which is solely the result of the buyer's "inexcusable" negligence, specific performance may be granted. *Perlmutter v. Bacas,* 219 Md. 406, 412–13, 149 A.2d 23, 26–27 (1959). On the other hand, such relief may be withheld in a contract to convey land where specifically enforcing the purchase and sale agreement would be highly unreasonable, *see id.,* or the court determines that the seller has an adequate remedy at law. 5A A. CORBIN, *supra* § 1145, at 138. This court has upheld the denial of specific performance in cases where there exist "significant equitable reasons for refusing to grant it." *Ross v. Eichman,* 129 N.H. 477, 480, 529 A.2d 941, 943 (1987) (quoting *Chute v. Chute,* 117 N.H. 676, 678, 377 A.2d 890, 891 (1977)). It is well settled that, depending upon the circumstances of the particular case, a material mistake of fact may provide such a defense to an equitable action. *See* 3 J. POMEROY, EQUITY JURISPRUDENCE § 868 (5th ed. 1941); *see also Shakra v. Benedictine Sisters,* 131 N.H. 417, 421, 553 A.2d 1327, 1330 (1987) (the decision to grant or deny specific performance rests with the sound discretion of the trial court according to the circumstances of the case).

In the case before us, the trial court denied the plaintiffs' request for specific performance after finding that (1) the defendant exercised due care in his attempt to ascertain the lot he was to bid on at the auction; (2) despite the exercise of due care, the defendant mistakenly bid on the wrong lot; (3) the defendant's mistake went to the substance of the agreement; and (4) the totality of the circumstances indicate that it would be inequitable to grant specific performance. Generally, the trial court's decision will be affirmed unless the record illustrates that it is unsupported by the evidence or based upon untenable grounds. *Gulf Oil Co. v. Rybicki,* 102 N.H. 51, 52, 149 A.2d 877, 879 (1959). The record produced below shows neither basis for disturbing the trial court's findings.

 The plaintiffs next argue that the trial court erred in improperly considering the defendant's subjective state of mind in

signing the purchase and sale agreement. It is clear, however, that Mr. Musumeci did view a lot on June 26 that was different from the lot he purchased on June 27. Given the testimony presented, the trial court was free to believe that Mr. Musumeci intended to buy the Pittsfield lot rather than the Turnpike lot. *See Johnson v. Nash*, 131 N.H. 731, 734, 559 A.2d 842, 844 (1989) (fact finder has discretion to credit or not credit the testimony of witnesses). The defendant's state of mind when he signed the purchase and sale agreement was properly considered by the court as evidence of the defendant's mistake, rather than evidence of the contract's meaning. The determination whether a mistake goes to a material matter in a contract depends upon the intention of the parties in making that contract. *See Plastic Laminated Prods., Inc. v. Seppala*, 115 N.H. 22, 24, 332 A.2d 185, 187 (1975). Therefore, after assessing the evidence produced below, we find that the court did not commit error when it considered Mr. Musumeci's state of mind at the time he signed the purchase and sale agreement.

■■ The plaintiffs also argue that, in light of the defendant's carelessness, as evidenced by the many differences between the two lots in question, fairness requires specific performance of the purchase and sale agreement. The record shows that the Turnpike lot has a brook, or as the defendant's witness described it, a swamp, on three acres, whereas the Pittsfield lot has seven dry acres. The plaintiffs' argument, however, does not refute the trial court's findings. Rather, this claim emphasizes the inequity a specific performance decree would create in this situation. Mr. Musumeci's mistake did not concern the value or condition of the property, but went to the identity of the land itself. A mistake as to the identity of a parcel of land that is the subject of a purchase and sale agreement is a material and vital mistake. *See* 3 A. CORBIN, *supra* § 604, at 633; RESTATEMENT (SECOND) OF CONTRACTS § 146 (1964). A purchaser is usually entitled to rescission of the contract when a mistake of this nature occurs. 3 A. CORBIN *supra*. Although the defendant never sought rescission of the purchase and sale agreement in this case, given the materiality of the mistake and the disparity between the two pieces of land, the trial court could find, as it did, that it would be inequitable to grant specific performance.

■■ We now address the plaintiffs' claim that no reasonable finder of fact could have found that the defendant exercised due care. We will sustain a trial court's grant or denial of specific performance unless it appears from the record to have been unsupported by the

evidence or based upon untenable grounds. *Rybicki*, 102 N.H. at 52, 149 A.2d at 879. Again, the trial court's decision here was neither untenable nor unsupported by the evidence. There was evidence that Mr. Musumeci travelled to Northwood to view the lot one day prior to the auction, and that when he found the Pittsfield lot there was no sign indicating the lot's corresponding tract number. The trial court also determined that the Pittsfield lot and the Turnpike lot were located in the same area and in close proximity to each other. Furthermore, the trial court heard the defendant's witness testify that he and the defendant promptly brought the mistake to the attention of the auctioneer and the plaintiffs as soon as it was discovered. This same witness also testified that the defendant offered to finance a new auction in order to sell the Turnpike lot. Nevertheless, the plaintiffs never accepted this offer and did not produce any evidence at trial showing their detrimental reliance upon the defendant's mistake. As the fact finder, the trial court has the discretion to credit or not credit the testimony of witnesses before it. *Nash*, 131 N.H. at 734, 559 A.2d at 844. Based upon the above testimony, the trial court could properly have found: (1) that Mr. Musumeci exercised due care in ascertaining the tract he wanted to bid on, and (2) that the plaintiffs did not reasonably rely to their detriment upon Mr. Musumeci's mistake. Therefore, we will not disturb the trial court's findings.

■■ ■■ Finally, the plaintiffs also contend that the trial court erred in finding that the only evidence of plaintiffs' damages consisted of a $2050 bill for attorney's fees. This court has held that a denial of specific performance does not necessarily bar the right to damages at law. *See Johnson v. Korsak, Inc.*, 120 N.H. 412, 416, 415 A.2d 1141, 1143 (1980). The only evidence of damages submitted to the trial court, however, was the plaintiffs' attorney's bill for $2050. Although Mr. Bailey testified that he renewed the sewer and construction approvals for the Turnpike lot, no evidence was presented as to the costs incurred in renewing these approvals. Having no basis for calculating the costs of these permits, the trial court had no basis upon which to award any additional damages. Based on the findings and rulings made in this case, we hold that the trial court did not err in awarding the plaintiffs the $2050 incurred in paying their attorney. As the trial court ordered, this award must be taken out of the $5000 deposited by the defendant prior to the auction, and the difference must be returned to the defendant.

*Affirmed.*

HORTON, J., did not sit; the others concurred.