**BANK OF NEW ENGLAND OLD COLONY, N.A., Plaintiff, Appellant,**

v.

**R. Gary CLARK, Tax Administrator, for the State of Rhode Island, Defendant, Appellee.**

No. 92–1876.

United States Court of Appeals, First Circuit.

Heard Dec. 10, 1992.

Decided March 2, 1993.

Lawrence H. Richmond, Counsel, F.D.I.C., with whom Ann S. DuRoss, Asst. Gen. Counsel, Colleen B. Bombardier, Sr. Counsel, David N. Wall, Sr. Counsel, F.D.I.C., Mark A. Pogue, Alfred S. Lombardi and Edwards & Angell, were on brief, for appellant F.D.I.C., as receiver, for New Bank of New England, N.A.

Bernard J. Lemos, Legal Officer (Taxation), with whom Marcia McGair Ippolito, Chief Legal Officer (Taxation), was on brief, for appellee.

Before TORRUELLA, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

TORRUELLA, Circuit Judge.

In this appeal we must resolve a seemingly irreconcilable clash between two statutes. One vests the Federal Deposit Insurance Corporation ("FDIC") with the power to remove "any action, suit, or proceeding" to federal court. 12 U.S.C. § 1819(b)(2)(B). The other commands that the district court "shall not" grant relief in cases involving issues of state tax law. 28 U.S.C. § 1341. In this case, the FDIC removed a Rhode Island tax dispute to the district court, and the district court remanded the case to the state court under § 1341, finding that the statute required abstention. Because we concur with the district court's result, we affirm.

## FACTS

Appellant bank claimed a refund of $419,025 on its 1987 Rhode Island Bank Institution Excise Tax Return. The Rhode Island Tax Division, however, issued only a partial refund of $285,347. The bank filed an administrative appeal for the balance, but the partial refund was upheld. The bank then resorted to the Rhode Island state court for relief, alleging only state law grounds for relief.

In 1991, while that action was pending, the bank was declared insolvent. The Comptroller of the Currency appointed the FDIC as receiver and created a "bridge bank" to provide continued service to the bank's former customers. The bridge bank assumed the tax refund claim from the insolvent bank. When the Comptroller later declared the bridge bank insolvent, the FDIC as receiver took possession of the bridge bank's assets, including the pending tax refund suit.

Pursuant to § 1819(b)(2)(B),[1] the FDIC removed the pending state court suit to the federal district court in Rhode Island.[2] The state moved to remand or dismiss, arguing that § 1341, otherwise known as the Tax Injunction Act ("the Act"), required the federal court to remand the case to the Rhode Island state court.[3] The FDIC, in response, claimed that it was exempt from the operation of the Act under the judicially-created "federal instrumentalities" exception, which establishes that the Act does not bar access to the federal courts by the United States or its instrumentalities. A magistrate agreed that the FDIC was a federal instrumentality exempt from the Act. On review, however, the district court determined that (1) the FDIC was not entitled to claim the federal instrumentality exemption; (2) section 1819 vested the court with jurisdiction over the matter; and (3) the Act nonetheless required the court to abstain from deciding the case. The district court therefore remanded the case to the Rhode Island state court, 796 F.Supp. 633 (1992), and this appeal followed.

## LEGAL ANALYSIS

### I.

We begin by addressing the district court's determination that the Act is an abstention statute, as opposed to a jurisdictional statute. If the district court is cor-

---

1. Section 1819(b) provides in relevant part:

   (1) Status
   The Corporation, in any capacity, shall be an agency of the United States for purposes of section 1345 of Title 28, without regard to whether the Corporation commenced the action.
   (2) Federal court jurisdiction
   (A) In general
   Except as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States.
   (B) Removal
   Except as provided in subparagraph (D), the Corporation may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court.

   It is undisputed that subparagraph (D) does not apply here.

2. Apparently the FDIC took this action one day before a discovery hearing and three days before trial. The case was to be heard together with a related case involving another Rhode Island bank and the same counsel.

3. The Act states that federal courts "shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.

rect in this ruling, then the apparent conflict between the two statutes is resolved by the workable solution that the district court proposed. Unfortunately, we must conclude that the district court erred in characterizing the Act as an abstention statute.

■ The Supreme Court has instructed us, and we have held, that the Act is "jurisdictional" in nature, and therefore serves to oust the federal courts of jurisdiction in those cases which fall within its reach. *California v. Grace Brethren Church*, 457 U.S. 393, 418–19, 102 S.Ct. 2498, 2513, 73 L.Ed.2d 93 (1982) (because of Act, "no federal district court had jurisdiction"); *Trailer Marine Transport Corp. v. Rivera Vázquez*, 977 F.2d 1, 4–5 (1st Cir.1992) (Act is "jurisdictional" and "not subject to waiver").

The policies behind the Act explain the need for a strong limitation on federal jurisdiction in state tax cases. With the Act, Congress sought "to protect tax collection as an 'imperative need' of government." *Trailer Marine*, 977 F.2d at 5 (quoting *Tully v. Griffin, Inc.*, 429 U.S. 68, 73, 97 S.Ct. 219, 222, 50 L.Ed.2d 227 (1976)). By divesting the federal courts of jurisdiction, Congress ensured against interference "with so important a local concern as the collection of state taxes." *Grace Brethren Church*, 457 U.S. at 408–09, 102 S.Ct. at 2508 (citing *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 522, 101 S.Ct. 1221, 1234, 67 L.Ed.2d 464 (1981)). It was the paramount importance of state taxation to state governments that led Congress to restrict federal jurisdiction.

■ Given this authority, the district court was wrong to abstain. The distinction between abstention and jurisdiction is important. When a court lacks jurisdiction, it has no authority to grant relief; when a court abstains, it has authority to grant relief but does not exercise it. The fact that the Act negates jurisdiction creates an apparent conflict with the FDIC removal statute, which grants jurisdiction.

## II.

■ Before directing our attention to this conflict, we must first determine whether the Act applies in this case. Specifically, we must address whether the FDIC is a federal instrumentality entitled to an exemption under the Act.[4] On this issue, we agree with the district court that the FDIC cannot escape from the requirements of the Act due to its status as a federal agency exempt from state taxation.

Though written in absolute terms, the Act does not apply to every state tax case. The courts have recognized a significant exception, the federal instrumentality exception, which allows the United States and its instrumentalities to bring suits on state tax issues in federal court in spite of the Act. *Department of Employment v. United States*, 385 U.S. 355, 357–58, 87 S.Ct. 464, 466–67, 17 L.Ed.2d 414 (1966). The exception arises out of the assumption that Congress would not have denied the federal government access to federal courts without a clear statement to that effect. *Id.*

Courts differ on whether the FDIC qualifies for the exception. *Compare Federal Deposit Insurance Corp. v. New York*, 928 F.2d 56, 61 (2d Cir.1991) (FDIC not federal instrumentality) *with Federal Deposit Insurance Corp. v. City of New Iberia*, 921 F.2d 610, 613 (5th Cir.1991) (FDIC is federal instrumentality). *See generally Pima Financial Service Corp. v. Intermountain Home Systems, Inc.*, 786 F.Supp. 1551 (D.Colo.1992) (cataloging FDIC federal instrumentality cases; holding FDIC not federal instrumentality).

In this circuit, we have outlined no "bright line" rule for whether a particular agency is entitled to claim the exception. *Federal Reserve Bank v. Commissioner of Corporations and Taxation*, 499 F.2d 60, 64 (1st Cir.1974). Rather, we have instituted a flexible test in which "each instrumentality must be examined in light of its

---

4. The parties agree that only state tax issues are involved in this case, and do not seriously argue that Rhode Island courts are inadequate under the Act. *See Keating v. Rhode Island*, 785 F.Supp. 1094, 1097 (D.R.I.1992).

governmental role and the wishes of Congress as expressed in relevant legislation." *Id.* We find that this test does not allow the FDIC to claim federal instrumentality status.

The FDIC's governmental role in this case is minimal. Rhode Island taxed a private bank, not the federal government. The FDIC only became involved when the bank was declared insolvent. As such, no issues of intergovernmental tax immunity exist in the case. Furthermore, if successful, the benefits from the refund claim will flow principally to the bank's creditors and depositors, not to the federal treasury.

The relevant legislation does not indicate that Congress intended to accord the FDIC federal instrumentality status for the purposes of the Act. We note that § 1819(b)(1), titled "Status," only grants the FDIC agency status for the purposes of § 1345, not for all purposes. Section 1345, in turn, creates "agency jurisdiction," a different statutory grant of jurisdiction than the removal statute in question here. *See Federal Savings and Loan Insurance Corp. v. Ticktin,* 490 U.S. 82, 85–87, 109 S.Ct. 1626, 1628–29, 104 L.Ed.2d 73 (1989) (statutory grant of agency jurisdiction treated differently than grant of "arising under" and removal jurisdiction). In contrast, the Federal Savings and Loan Insurance Corporation ("FSLIC"), the FDIC's predecessor, was granted agency status for all purposes, including for the Act. 12 U.S.C. § 1730(k)(1)(A) (repealed 1989).

It is apparent that Congress knew how to make an agency a federal instrumentality in the present context. We therefore must assume that Congress chose not to do so with the FDIC, as the pertinent language is missing from the statute. Because the FDIC cannot claim to be a federal instrumentality in this case, the Act applies.

### III.

■ Having determined that the Act applies in this situation, we come to the apparent conflict between § 1819(b)(2)(B) and the Act.[5] For the FDIC to prove that the § 1819(b)(2)(B) removal statute trumps the Act, it must show that Congress clearly and manifestly intended the statute to be an exception to the Act.[6] This substantial burden arises out of two sources.

First, in *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), the Supreme Court noted that a statute granting federal court jurisdiction over Employee Retirement Income Security Act ("ERISA") cases only trumps the Act in two situations. The party claiming federal court jurisdiction can show that the state remedy is not speedy or efficient, or the party can show that the jurisdiction statute was intended to be an exception to the Act. While the Court did not resolve this issue in the case, *id.* at 20 n. 21, 103 S.Ct. at 2852 n. 21, and its statements were therefore dicta, we find its approach persuasive in light of the strong policy embodied by the Act.

Second, the Court's statements in *Franchise Tax Board* are consistent with the well-settled canon of statutory interpretation disfavoring the repeal of a statute by implication, especially if that statute is a long-standing one. *Andrus v. Glover Construction Co.,* 446 U.S. 608, 618, 100 S.Ct. 1905, 1911, 64 L.Ed.2d 548 (1980). The same principle applies to partial repeals. *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 468, 102 S.Ct. 1883, 1890, 72 L.Ed.2d 262 (1982). As has been frequently stated, there are

> two well-settled categories of repeals by implication—(1) where provisions in the two acts are in irreconcilable conflict ...; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute.... But, in ei-

---

**5.** As stated previously, § 1819(b)(2)(B) allows the FDIC to "remove any action, suit, or proceeding," while the Act commands that the district court "shall not" adjudicate state tax issues. *See supra* notes 1 and 3 for the full text of these statutes.

**6.** Alternatively it must show that the Rhode Island does not provide a "plain, speedy and efficient remedy," as required under § 1341. *See supra* note 4.

ther case, the intention of the legislature to repeal must be clear and manifest. . . . *United States v. Commonwealth of Puerto Rico*, 721 F.2d 832, 836 (1st Cir.1983) (citations omitted). The FDIC, as a consequence of this canon and the *Franchise Tax Board* case, must show that Congress clearly and manifestly intended to override the provisions of the Act by passing the FDIC removal statute.

We turn first to the language of the removal statute to determine what Congress intended. The mere fact that § 1819(b)(2)(B) states that the FDIC may remove "all" actions does not in itself demonstrate the clear and manifest intent of Congress to trump the Act. *See Moe v. Confederated Salish & Kootenai Tribes of Flathead Reservation*, 425 U.S. 463, 472, 96 S.Ct. 1634, 1641, 48 L.Ed.2d 96 (1976) (conflict between Indian tribe removal statute and Tax Injunction Act). Such language, rather, is consistent with a general grant of jurisdiction which did not take into account the provisions of the Act. *Id.*

The structure of § 1819(b) does not demonstrate a clear and manifest intent to override the Act. This lack of clear intent is underscored by the contrast between the FDIC removal statute, and the removal statute applicable to its predecessor, the FSLIC. The FSLIC statute began by stating "[n]otwithstanding any other provision of law . . . ," manifesting a clear intent to override any conflicting statutes in existence. The FDIC statute contains no such clause. As we stated above, it is obvious that Congress knew how to exempt the FSLIC from the operation of the Act when it so desired. The absence of similar language in the revisited statute indicates to us that Congress did not intend to override the Act.

Congress has limited the FDIC's jurisdiction in other ways. Agency jurisdiction, pursuant to § 1345, is expressly subject to the provisions of "other law." Assuming that the federal instrumentality exception to the Act does not apply, the Act would be such "other law" limiting the FDIC's access to the federal courts. The structure of § 1819(b) thus does not demonstrate a clear and manifest intent to override the Act.

We turn now to the legislative history of the removal statute for whatever light it may shed on the issue. In this regard, the parties have directed us to, and we have found, no reference in the relevant legislative history on how the removal statute affects the operation of the Act. Indeed, there is no reference to the Act in the extensive history of the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), of which the removal statute forms a part.

In support of its position that Congress intended the removal statute as an exception to the Act, the FDIC directs us to portions of the legislative history stating that the statute expanded the scope of federal jurisdiction for the FDIC. Indeed, we have already acknowledged this purpose in another context. *Capizzi v. Federal Deposit Insurance Corp.*, 937 F.2d 8, 10–11 (1st Cir.1991) (FIRREA "expanded federal jurisdiction" beyond previous removal provision). The fact of expansion begs the question, however, of what, if any, limits on federal jurisdiction exist. We must find that the expansion specifically reverses the prohibition on federal jurisdiction mandated by the Act for the FDIC to win. The absence of such concrete evidence, however, convinces us that the removal statute does not trump the Act.

Given the uncertainties we have found in the language, structure and legislative history of § 1819(b), we cannot say that the statute clearly and manifestly evinces an intent to trump the Act. We thus construe § 1819(b) as subject to the limitation on federal jurisdiction in the Act. As the district court was correct in determining that this case belongs in state court, we affirm.

Affirmed.