Eleanor C. SCHOCK, Plaintiff,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as Receiver of Old Stone Bank FSB, Defendant.**

No. CIV. A. 97–530–L.

United States District Court, D. Rhode Island.

Oct. 31, 2000.

John D. Deacon, Medeiros & Sanford, Providence, RI, for Eleanor C. Schock.

Robin E. Feder, U.S. Attorney's Office, Providence, RI, for U.S.

David J. Lawson, Joseph F. Shea, Nutter, McClennen & Fish, Boston, MA, Z. Scott Birdwell, Federal Deposit Insurance Corp., Washington, DC, for F.D.I.C.

## DECISION AND ORDER

LAGUEUX, District Judge.

Plaintiff Eleanor C. Schock ("plaintiff") sued the Federal Deposit Insurance Corporation, acting in its capacity as Receiver of Old Stone Bank FSB ("FDIC–Receiver") for breach of contract. Plaintiff prevailed and now seeks to recover attorneys' fees and costs pursuant to the Equal Access to Justice Act ("EAJA"). 28 U.S.C. § 2412 (1994).

The EAJA provides that attorneys' fees may be awarded to a party that prevails against a federal agency in a civil action where the agency cannot show that its position was substantially justified. The issue presented in this case is whether the FDIC qualifies as a federal agency when it is acting in its capacity as a receiver of a failed federal bank. Because this Court concludes that the FDIC does not qualify as a federal agency in these circumstances, plaintiff's motion for attorneys' fees is denied. Plaintiff is only entitled to the costs that are customarily awarded to the prevailing party in any civil action.

## I. Travel of the Case

Plaintiff is the daughter of Ragnar Miller, who died on May 6, 1993, and is the assignee of all claims of the Estate of Ragnar Miller (the "Estate"). During his lifetime, Miller granted a broad power of attorney to Attorney Pat Nero, giving Nero the authority to withdraw funds from Miller's bank accounts. Under the guise of that power of attorney, after Miller's death, Nero withdrew $23,331.72 from Miller's savings account at Old Stone Federal Savings Bank ("Old Stone") on August 27, 1993, deposited the funds into his own account, and then squandered them.

At the time of this transaction, the Resolution Trust Corporation ("RTC") was acting as conservator of Old Stone.[1] The FDIC later succeeded the RTC pursuant to 12 U.S.C. § 1441a(m)(1) (1994).

After discovering Nero's transgression, plaintiff filed suit against the United States, the FDIC–Receiver, and the FDIC acting in its corporate capacity ("FDIC–Corporate"). Essentially, plaintiff alleged that defendants were liable for the actions of the bank employees who allowed Nero to illegally withdraw money from Miller's account.

Plaintiff's first amended complaint stated three claims: Count I against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2674 (1994) (the "FTCA"); Count II against the FDIC–Receiver as conservator of Old Stone; and Count III against FDIC–Corporate as the insurer of all deposits at Old Stone.

The parties first appeared before the Court on April 24, 1998, for a hearing on various motions. The United States moved to dismiss Count I; FDIC–Corporate moved to dismiss Count III; and plaintiff moved for summary judgment against FDIC–Receiver on Count II. Plaintiff also moved to amend her complaint to add a negligence claim against the United States under the FTCA. The Court denied the United States' motion to dismiss Count I, but granted FDIC–Corporate's motion to dismiss Count III. The Court also denied plaintiff's motion for summary judgment on Count II, but granted her motion to amend the complaint. *See Schock v. United States*, 21

---

**1.** Old Stone's predecessor institution, Old Stone Bank, a Federal Savings Bank, was closed by the RTC on January 29, 1993.

F.Supp.2d 115, 125 (D.R.I.1998) (*hereinafter Schock I* ).

■ In granting FDIC–Corporate's motion to dismiss, the Court noted that FDIC–Corporate only insures funds on deposit at the time the bank fails. Because Nero wiped out Miller's savings account on August 27, 1993, there were no funds on deposit for FDIC–Corporate to insure when Old Stone was closed and liquidated on July 8, 1994. In addition, the FDIC is entitled to rely solely on the records of the failed institution in determining whether or not there are funds on deposit. *See Villafane–Neriz v. FDIC,* 75 F.3d 727, 731 (1st Cir.1996). Thus, there was no basis on which to find FDIC–Corporate liable for plaintiff's loss.

The parties appeared before the Court again on July 29, 1998, for a hearing on cross-motions for summary judgment. The United States moved for summary judgment on Count I and the new Count IV, and plaintiff renewed her motion for summary judgment on Count II against the FDIC–Receiver. While the Court discussed several points of law that would support the United States' motion for summary judgment, only two are of consequence to the determination of the instant motion for attorneys' fees.

First, the Court noted that although Count I and Count II were based on identical allegations and originally asserted by the plaintiff as claims for conversion, plaintiff later saved Count II from dismissal by arguing that it was actually a claim for breach of contract. *See Schock v. United States,* 56 F.Supp.2d 185, 192 (D.R.I.1999) (*hereinafter Schock II* ). Although the same set of facts can give rise to two claims, one sounding in tort and the other in contract, a plaintiff is prohibited from making conflicting representations to a court under the doctrine of judicial estoppel. Accordingly, the Court determined that the claim in Count I was based on Old Stone's obligation as a debtor on the deposit account, which sounds in contract. *See id.* at 192–93. Because contract claims are not cognizable under the FTCA, the Court dismissed Count I. *See id.* at 193.

Second, the United States argued that neither claim could be sustained under the FTCA unless plaintiff could show that the bank employees who processed Nero's withdrawal ("the tellers") were federal employees under the FTCA. The Court withheld judgment on whether the tellers qualified as government employees under the FTCA, but noted that the United States could prevail at trial by showing that the tellers were not government employees. *See id.* at 188.

Plaintiff's remaining claims against the United States and the FDIC–Receiver were ultimately resolved during a bench trial that was held on November 3–8, 1999. At the close of plaintiff's evidence, the United States and the FDIC–Receiver made motions for judgment in their favor pursuant to Rule 52(c) of the Federal Rules of Civil Procedure.[2]

The Court granted the United States' motion, concluding that plaintiff could not sustain her claim for negligence under the FTCA against the United States. The Court based its decision on the following three reasons: the two tellers who allowed Nero to withdraw the funds from Miller's savings account were employees of Old Stone, and were not federal employees; plaintiff failed to prove the elements of negligence, particularly the element of proximate cause; and the claim was for breach of contract, which is not cognizable under the FTCA. *See* Trial Transcript, November 5, 1999, p. 106–09.

The Court found as a fact and concluded as a matter of law that the teller and head teller who allowed Nero to "clean out" Miller's bank account "were not federal employees, pure and simple." *Id.* at 106.

---

**2.** Rule 52(c) allows the court to enter judgment as a matter of law in a bench trial where a party has failed to prove a claim or defense. Fed.R.Civ.P. 52(c). It is the equivalent of a motion for judgment as a matter of law in a jury case.

In support of this ruling, the Court found that the branch manager and all the employees working under her worked for Old Stone, and that the employment status and W–2 forms of the employees at Old Stone showed that they were "clearly not federal employees." *Id.* at 107. In addition, although some RTC employees generally oversaw Old Stone's operations, the Court found that they did not exercise the degree of day-to-day control required to bring the bank employees within the definition of federal employees. *See id.*

The Court then addressed the FDIC–Receiver's motion for judgment under Rule 52(c). The FDIC–Receiver argued that Old Stone was entitled to presume Nero was authorized to withdraw the funds under the Uniform Fiduciaries Act ("UFA"), which protects third parties who transfer funds to a fiduciary in good faith. *See* R.I. Gen. Laws § 18–4–16 (1996). The UFA only applies, however, where the funds are transferred to a person who is a fiduciary in fact. Because Nero's power of attorney terminated at Miller's death, Nero could only be considered a fiduciary under the UFA if he had apparent authority.

Finding that publication of Miller's obituary provided notice of Miller's death to Old Stone, the Court concluded that Nero did not have apparent authority. *See* Trial Transcript, November 8, 1999, p. 18. In so holding, the Court established a new rule on the issue of notice. Stating that "[a]ny other rule would reward ignorance," the Court held that:

> "notice [to the bank] is the publication of the obituary in a newspaper in the area and, therefore, the bank has a duty to put a procedure in place whereby it notes which of its customers have died, and makes that information available within the bank to tellers, or anybody else who would deal with someone who claims to be a fiduciary." *Id.* at 31.

Since Nero was not a fiduciary at the time he withdrew the funds, the UFA did not protect Old Stone. *See id.* at 17. As a result, the Court denied the FDIC–Receiver's motion for judgment. *See id.* at 19.

The Court then held that payment of the money in Miller's account to Nero resulted in a breach of contract.[3] *See id.* Although Old Stone was liable for this breach, the RTC inherited that liability when it became the conservator of the bank, and the FDIC–Receiver likewise inherited that liability when it became the statutory successor to the RTC. Therefore, judgment in the amount of $23,331.72 plus interest was entered against the FDIC–Receiver. *See id.* at 32.

Thereafter, plaintiff moved for attorneys' fees and costs pursuant to the EAJA. This Court heard arguments on the motion and took it under advisement. The matter is now in order for decision.

## II. Discussion

Bringing suit against the United States government or defending an action brought by the United States government is costly business. For this reason, Congress enacted the Equal Access to Justice Act to encourage parties to challenge or defend against unreasonable governmental action. See H.R.Rep. No. 96–1418, at 12 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4984, 4991.

There are two bases for an award of attorneys' fees following a court proceeding under the EAJA. Under the first fee-shifting provision, a prevailing party may seek fees from the government to the extent that fees would be recoverable from any other party. *See* 28 U.S.C. § 2412(b). Thus, to recover fees under this provision, the prevailing party must allege that an existing fee-shifting statute or common law exception to the American rule on attorneys' fees applies.

---

**3.** The Court instructed that the proper procedure for Old Stone to employ in these circumstances would have been to put a freeze on Miller's account until a fiduciary authorized to act on behalf of the Estate was appointed.

The second fee-shifting provision is found in subsection 2412(d). That subsection provides an independent basis for an award of attorneys' fees where certain prerequisites are met. The party must prevail against the United States or an agency of the United States in a non-tort civil action, the prevailing party must meet certain eligibility requirements,[4] and the position of the United States cannot be substantially justified. *See id.* at § 2412(d).

██ Plaintiff bases her motion for attorneys' fees on subsection 2412(d), arguing that all requirements for an award of fees pursuant to this provision have been met. Defendant FDIC–Receiver objects, arguing that the EAJA is inapplicable because plaintiff's claim was against Old Stone, not against an agency of the United States. Therefore, the critical issue before this Court is whether the FDIC–Receiver qualifies as an agency of the United States for purposes of the EAJA. For the reasons that follow, this Court concludes that it does not.

The Federal Deposit Insurance Corporation was created during the economic and banking crises of the early 1930s, and is charged with maintaining public faith in the national banking system through a system of deposit insurance. *See generally* 2 Robert M. Taylor, III, Banking Law § 41.02 (describing the formation and powers of the FDIC). The performance of this task, however, requires the FDIC to act in two distinct capacities—as an insuring corporation and as a receiver.

In its corporate capacity, the FDIC acts as the insurer of deposits in all federally insured banks, and each depositor is insured for up to $100,000. *See* 12 U.S.C. § 1821(a)(1). In its capacity as a receiver, the FDIC liquidates and winds up the affairs of failed federal banks. *See id.* at § 1821(c)(2)(A)(ii). The division of labor between FDIC in its two capacities is so

distinct that they are considered separate legal entities, and "Corporate FDIC is not liable for wrongdoings by Receiver FDIC" or vice-versa. *Fed. Deposit Ins. Corp. v. Roldan Fonseca,* 795 F.2d 1102, 1109 (1st. Cir.1986).

While both sides of the FDIC perform valuable functions, it is the FDIC acting in its corporate capacity that carries out the primary function of the FDIC and actively implements the policy of the federal government. When the FDIC acts in its capacity as a receiver, its main objective is not to carry out governmental policy, but to distribute the assets of the failed bank for the benefit of the bank's depositors and creditors.

In the course of liquidating or winding up the affairs of a failed federal bank, the FDIC steps into the shoes of the bank and succeeds to all rights and liabilities of the bank. *See* 12 U.S.C. § 1821(d)(2)(A). In addition, the FDIC acting as receiver performs all functions in the name of the bank. *See id.* at § 1821(d)(2)(B). The FDIC then marshals the assets of the failed bank and distributes them to the bank's depositors and other creditors. *See id.* at § 1821(d)(11). If there are any funds remaining after all claims of creditors and administrative expenses have been paid, those funds are paid to the bank's shareholders or members. *See id.* Thus, all actions taken by the FDIC in its role as receiver are done on behalf of the bank and for the benefit of the bank's depositors and creditors.

In light of the FDIC's purpose and its organizational framework, it becomes apparent that when the FDIC is acting as a receiver it is performing a function normally accomplished by a private entity rather than a federal agency. As a receiver, the FDIC does not act on behalf of the United States government, and it does not perform any function unique to the federal

---

4. To be eligible to recover attorney's fees, the individual's net worth may not exceed two million dollars at the time the civil action is filed, or, if the prevailing party is a partner-

ship, corporation, association, unit of local government, or organization, its net worth may not exceed seven million dollars. *See* 28 U.S.C. § 2412(d)(2)(B).

government. Instead, it acts on behalf of the failed bank in the interest of that bank's creditors. While this alone would support this Court's conclusion that application of the EAJA to the FDIC acting as receiver is inconsistent with the purpose of the EAJA, relevant case law in this Circuit and the facts of this case also weigh against its application.

This Court has discovered only one case in which a party recovered attorneys' fees pursuant to the EAJA against the FDIC as receiver. *See Fed. Deposit Ins. Corp. v. Addison Airport of Texas, Inc.,* 733 F.Supp. 1121 (N.D.Texas 1990). In that case, however, the parties agreed that the FDIC was an agency of the United States. *See id.* at 1123 n. 4. While that agreement constitutes a judicial admission in that case, it has no effect on the ability of the FDIC to raise the argument in these proceedings that, when it is acting as a receiver, it is not an agency of the United States. In any event, the decision of the Addison Court has no precedential value in the First Circuit.

Despite the absence of case law on this issue, this Court is not without guidance from the First Circuit in deciding whether the FDIC, acting in its capacity as receiver, is a federal agency for purposes of the EAJA. In *Bank of New England Old Colony v. Clark,* 986 F.2d 600 (1st Cir.1993), the First Circuit affirmed a decision rendered by this writer that the FDIC, acting in its capacity as receiver, does not qualify as a federal instrumentality for purposes of the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341 (1994). *See* 986 F.2d at 603; *Bank of New England Old Colony v. Clark,* 796 F.Supp. 633, 638 (D.R.I.1992). Because the terms "federal instrumentality" and "federal agency" are really synonymous, this Court concludes that the First Circuit's decision in *Bank of New England Old Colony* is not only illuminating and instructive but effectively dispositive of this case.

The TIA divests the federal district courts of jurisdiction in cases involving issues of state tax law. *See* 986 F.2d at 602. However, under the judicially-crafted federal instrumentality exception, an instrumentality of the federal government that is exempt from state taxation may nonetheless bring its claim in federal court. *See Department of Employment v. United States,* 385 U.S. 355, 357–58, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966). The reasoning behind the exception is that Congress would not deprive the federal government of access to the federal courts without doing so expressly. *See id.* Thus, an entity's ability to claim the exception is dependent upon its status as an agency acting on behalf of the United States government.

The First Circuit has not adopted a bright line rule for determining whether an agency is to be considered a federal instrumentality for purposes of the exception. *See Fed. Reserve Bank v. Comm'r of Corps. and Taxation,* 499 F.2d 60, 64 (1st Cir.1974). Instead "each instrumentality must be examined in light of its governmental role and the wishes of Congress as expressed in relevant legislation." *Id.*

Applying this test to the FDIC in *Bank of New England Old Colony,* the First Circuit noted several factors that counseled against a finding that the FDIC, acting as a receiver, qualified as a federal instrumentality. First, because the FDIC was only involved in the case as a receiver, its governmental role was minimal. *See* 986 F.2d at 603. In addition, any tax refund would "flow principally to the bank's creditors and depositors, not to the federal treasury." *Id.*

The First Circuit then stated that the relevant legislation, the Financial Institutions, Reform, Recovery, and Enforcement Act ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183 (codified as amended in scattered sections of 12 and 15 U.S.C.), does not grant the FDIC federal agency status for all purposes. Although the Federal Savings and Loan Insurance Corporation, the FDIC's predecessor, was granted agency

status for all purposes, the FDIC was granted agency status only for purposes of 28 U.S.C. § 1345, which generally confers jurisdiction on the district courts over cases brought by a United States agency. *See* 12 U.S.C. § 1819(b)(1); 12 U.S.C. 1730(k)(1)(A) (repealed 1989). Based on the role played by the FDIC and Congress' decision to withhold agency status from the FDIC in some circumstances, the First Circuit concluded that the FDIC, acting in its capacity as a receiver, did not qualify as a federal instrumentality. *See* 986 F.2d at 603.

Applying the same analysis to this case, it is clear that the FDIC–Receiver cannot be considered a federal agency for purposes of the EAJA. As in *Bank of New England Old Colony,* the FDIC's only role was to act as receiver of Old Stone. The FDIC–Receiver did not act as a governmental agency, and did not implement or establish policy for the federal government in any way. Thus, its role as a governmental entity was minimal. In addition, the FDIC marshaled and distributed funds primarily for the benefit of Old Stone's depositors and creditors, not for the benefit of the federal treasury. Finally, there has been no amendment to FIRREA that expands the FDIC's agency status, and certainly no provision in FIRREA expressly making the FDIC, acting as a receiver, a federal agency for purposes of the EAJA.

In addition, it is clear in this case that the plaintiff's claim was against Old Stone, and not against an agency of the United States. As the Court found in *Schock II,* plaintiff brought a state law claim for breach of contract. That claim was based on the actions of two tellers that this Court specifically found were not federal employees. The tellers were employees of Old Stone. They followed bank policy instituted by Old Stone, and they were subject to the supervision of their branch manager at Old Stone. Supervision of Old Stone employees by the RTC was virtually nonexistent. Although the FDIC–Receiver ultimately paid for Old Stone's mistake, that is not enough to convert what is, in substance, a claim against a receivership estate into an action against the United States.

In short, there is nothing about plaintiff's claim to support her contention that she prevailed in an action against the United States. Plaintiff's claim was not based on unreasonable governmental action or regulation, but on a bank's failure to adequately protect the rights of its customers. Plaintiff prevailed against Old Stone in substance, and against the FDIC–Receiver in name only. This is not the type of confrontation that prompted Congress to enact the EAJA. Simply put, plaintiff's claim for attorneys' fees seeks to fit a square peg in a round hole. It cannot be done.

III. Conclusion

For the preceding reasons, this Court finds that the FDIC, acting in its capacity as receiver, is not an agency of the United States for purposes of the Equal Access to Justice Act. Accordingly, the EAJA is inapplicable to this case, and plaintiff's motion for attorneys' fees is denied. However, plaintiff is entitled to the taxation of costs as follows:

| | |
|---|---|
| Filing fee | $150.00 |
| Copying/exemplification | $665.00 |
| Deposition transcripts | $751.00 |
| Marshal's fees/service | $445.00 |
| Witness fees | $345.00 |
| Total: | $2,356.00 |

The total of those taxed costs shall be included in the judgment and the Clerk shall issue an amended judgment to reflect that award.

It is so ordered.