# United States Court of Appeals
## For the First Circuit

_____

No. 00-2514


ELEANOR C. SCHOCK,

Plaintiff, Appellant,

v.

UNITED STATES; FEDERAL DEPOSIT INSURANCE CORPORATION in its capacity
as deposit insurer and in its capacity as Receiver of Old Stone Bank,
F.S.B.,

Defendants, Appellees.

_____


APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, U.S. District Judge]

_____


Before

Torruella, Circuit Judge,
Cyr, Senior Circuit Judge,
and Lynch, Circuit Judge.

_____


John D. Deacon, Jr. for appellant.
Lawrence H. Richmond, with whom Ann S. DuRoss, Assistant General
Counsel, Robert D. McGillicuddy, Supervisory Counsel, and J. Scott
Watson, Counsel, Federal Deposit Insurance Corporation, were on brief,
for appellees.

_____

June 21, 2001

_____

LYNCH, **Circuit Judge**.  In the Equal Access to Justice Act (EAJA), Congress provided that a prevailing party may recover attorneys' fees and expenses in a civil action against any "agency . . . of the United States" unless the court finds the position of the United States "substantially justified."  28 U.S.C. § 2412(d)(1)(A).  This appeal is about the denial of EAJA fees to a plaintiff who was successful in a contract claim against the FDIC as receiver of an insolvent bank.  Attorneys' fees and expenses in the sum of $27,896.00 are sought for a judgment for plaintiff of $23,331.72.  The district court denied the claim on the ground that the FDIC as receiver was not an agency of the United States.  We affirm, albeit on different grounds.

## I.

Schock, the daughter and only heir of Ragnar Miller, discovered that her late father's attorney, Pat Nero, had embezzled from her father's estate, including the sum of $23,331.72 in Miller's savings account at Old Stone Bank.  At the time Nero withdrew the funds, Old Stone was being run under the conservatorship of the Resolution Trust Corporation (RTC), the FDIC's statutory predecessor.  As holder of her father's

estate's claims, Schock sued the FDIC, as receiver for Old Stone, for breach of contract, alleging that the bank permitted an unauthorized signatory (Nero) to withdraw funds on deposit in the Miller savings account. Schock also brought a conversion claim against the United States under the Federal Tort Claims Act and a claim for insurance liability against the FDIC in its corporate capacity, and subsequently amended her complaint to bring a negligence claim against the FDIC-Receiver.

Schock moved for summary judgment on her breach of contract claim. The FDIC-Receiver invoked the protection of Rhode Island's version of the Uniform Fiduciaries Act (UFA), which provides a defense to "a person who in good faith pays or transfers to a fiduciary any money . . . which the fiduciary is authorized to receive" if the fiduciary later misappropriates those funds. R.I. Gen. Laws § 18-4-16. Schock argued that this law did not apply because Nero's apparent authority to withdraw the money as Miller's agent, under the Restatement (Second) of Agency, ended by operation of law when Miller died. See Restatement (Second) Agency § 120 cmt. c (1958).[1]

---

[1]    Restatement (Second) of Agency § 120 states:

-4-

The district court rejected Schock's argument, ruling that apparent agency terminates only when a third party has notice of the termination. Schock v. United States, 21 F. Supp. 2d 115, 121 (D.R.I. 1998) (Schock I). The court noted that the Rhode Island Supreme Court has not yet ruled whether reliance on an agent's prior agency status is sufficient to qualify the agent as a fiduciary under R.I. Gen. Laws § 18-4-6. Id. at 121-22. But the court predicted, based on its reading of Restatement (Second) of Agency § 125,[2] that the Rhode Island law

> (1) The death of the principal terminates the authority of the agent without notice to him, except as stated in subsections (2) and (3) and in the caveat.
>
> (2) Until notice of a depositor's death, a bank has authority to pay checks drawn by him or by agents authorized by him before death.
>
> (3) Until notice of the death of the holder of a check deposited for collection, the bank in which it is deposited and those to which the check is sent for collection have authority to go forward with the process of collection.
>
> Comment c states:
>
> Like authority, apparent authority terminates with the death of the principal. Third persons who, in ignorance of the death, deal with the former agent . . . have no rights upon the contract against the estate of the deceased, unless the situation is one within the rules stated in Subsections (2) or (3) or the Caveat . . . .

[2] "Apparent authority, not otherwise terminated, terminates when the third person has notice of: (a) the termination of the agent's authority . . . ." Restatement (Second) Agency § 125.

protects third parties who rely on the apparent authority of former agents before they have notice of the termination of agency and in good faith pay money to the apparent agents. Id. at 122. The court applied Restatement § 125 to the situation of death of the principal, despite the language of § 120 comment c dealing with that situation. The court noted the Restatement's definition of "notice" as "when the third party . . . 'knows, should know, has reason to know, or has been given a notification of the occurrence of an event from which, if reasonable, he would draw the inference that the principal does not consent to have the agent so act for him.'" Id. (quoting Restatement (Second) of Agency § 135 at 333). Finding material issues of disputed fact as to the question of actual notice to the bank of Miller's death, the court denied Schock's summary judgment motion on her breach of contract claim. See id.

Schock renewed her summary judgment motion, asking the district court to reconsider its rejection of her argument that apparent authority ends by operation of law upon a principal's death. Schock directed the court's attention to Restatement § 120 comment c. The court rejected comment c as "illogical" and contrary to what it believed Rhode Island public policy to be.

Schock v. United States, 56 F. Supp. 2d 185, 193 (D.R.I. 1999) (Schock II). Schock also offered evidence that the bank had actual notice when it permitted the Nero savings account withdrawal that Miller had died. Schock's new evidence included a bank employee's statement that the bank had in place a procedure for checking the obituaries in the local paper to see whether bank clients had died, and that an obituary for Miller appeared in that paper. The court found the evidence disputed and again denied Schock's motion for summary judgment on her breach of contract claim. Id. at 195.

After a bench trial, where it was established that the bank did indeed have such a procedure, the district court concluded as to the contract claim that the bank should have known that Miller died because his obituary was published in a local newspaper. That the bank had notice of Miller's death, the court concluded, extinguished Nero's apparent authority, and the bank therefore was not entitled to invoke R.I. Gen. Laws § 18-4-16 as a defense to liability for breach of contract. The court also entered judgment for the FDIC on Schock's tort claim.

Judgment entered for Schock on her contract claim.[3]

Schock filed a motion for an award of attorneys' fees and expenses incurred in her claim against FDIC-Receiver pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (1994), which allows a prevailing party to recover fees and expenses incurred in a civil action against the United States, including "any agency . . . of the United States."  Id. § 2412(d).  The district court denied the claim, concluding that the FDIC in its role as receiver is not an "agency of the United States" within the meaning of the EAJA.  Schock v. FDIC, 118 F. Supp. 2d 165, 171 (D.R.I. 2000) (Schock III).

**II.**

A.  The Equal Access to Justice Act

The EAJA provides that a court "shall award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special

---

[3]     As of March 26, 2001, the judgment with interest amounted to $46,331.  The FDIC, as receiver of Old Stone Bank, has paid the sum. As a result, Schock's appeal from the district court's dismissal of her Count 3 depository-insurance claim is now moot.

circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

The United States is defined to include "any agency and any official of the United States acting in his or her official capacity." Id. § 2412(d)(2)(C). The purpose of the EAJA is to remove economic deterrents to parties who seek review of unreasonable government action by allowing certain prevailing parties to recover an award of attorney fees, expert witness fees, and other expenses against the United States. See H.R. Rep. No. 96-1418, at 5-6 (1980), reprinted in 1980 U.S.C.C.A.N. 4984, 4984. Schock is a prevailing party as to the contract claim.

We review the district court's denial of Schock's fee application under the EAJA for abuse of discretion. Pierce v. Underwood, 487 U.S. 552, 557 (1988) (reviewing grant or denial of EAJA fee applications only for an abuse of district court's discretion). Whether the EAJA applies to a contract claim against the FDIC when it acts as a receiver of a bank -- that is, whether the FDIC as receiver acts as an agency of the United States for EAJA purposes or merely functions like a private-sector receiver or bank -- is a difficult question. It is difficult because what is an "agency" of the United States for

-9-

EAJA purposes is not a self-defining term, and there are differing and conflicting policy objectives that are relevant to determining congressional intent. We decline to reach the issue.[4] Mindful of the Supreme Court's admonition not to turn an EAJA fee application into a second major litigation, Pierce, 487 U.S. at 563, we prefer to resolve the less problematic question whether the FDIC-Receiver's litigation position was "substantially justified." See Armster v. United States Dist. Court, 817 F.2d 480, 483-84 (9th Cir. 1987) (reaching "substantially justified" question under § 2412(d)(1)(A) and bypassing "agency" question); BayBank Middlesex v. Ralar Distribs., 69 F.3d 1200, 1202 (1st Cir. 1995) (appellate court may affirm district court's ruling on any ground adequately supported by the appellate record).

B.  Whether the FDIC's position was substantially justified

The burden is on the government to demonstrate that its position was "substantially justified." See Sierra Club v. Secretary of Army, 820 F.2d 513, 517 (1st Cir. 1987). Although

---

[4]  Perhaps Congress will see fit to give greater clarity before this Court is required to resolve the issue.

-10-

the language of the statute refers to a "prevailing party," 28 U.S.C. § 2412(d)(1)(A), the statute makes clear that courts are to examine both the prelitigation actions or inaction of the agency on which the litigation is based and the litigation position of the United States, id. § 2412(d)(2)(D); see Sierra Club, 820 F.2d at 516. A position which is substantially justified at the initiation may not be justified later in the agency's continuation of the litigation. Dantran, Inc. v. United States Dep't of Labor, 246 F.3d 36, 41 (1st Cir. 2001).

The government need not show that its position was "justified to a high degree"; rather, it must show that its position was "justified in substance or in the main -- that is, justified to a degree that could satisfy a reasonable person." Pierce 487 U.S. at 565 (internal quotation marks omitted). The Supreme Court has said this is equivalent to the "reasonable basis both in law and fact" formulation we have used. See, e.g., United States v. Yoffe, 775 F.2d 447, 449 (1st Cir. 1985) (asking whether government's position was "reasonable both in law and fact"). As the Supreme Court has said, this area is a difficult one for "useful generalization." Pierce, 487 U.S. at 562. Nonetheless, some rules of analysis have emerged:

-11-

1) There must be an examination of the actual merits of the government's litigation position as to both the facts and the law. See Pierce, 487 U.S. at 568-69.

2) The mere fact that the government does not prevail is not dispositive on the issue of substantial justification. See De Allende v. Baker, 891 F.2d 7, 13 (1st Cir. 1989).

3) Conversely, that the government succeeded at some stage of the litigation does not by itself prove the requisite level of justification. Dantran, 246 F.3d at 40.

4) Nonetheless, the legislative history of the EAJA indicates courts should look closely at cases where there was judgment on the pleadings or a directed verdict against the government or where an earlier suit by the government on the same claim had been dismissed. H. R. Rep. No. 96-1418, at 11 (1980), reprinted in 1980 U.S.C.C.A.N. 4989-90.

5) Whether one court agreed or disagreed with the government does not establish that the government's position was not substantially justified, but a string of court decisions going either way can be indicative. Pierce, 487 U.S. at 568; see also De Allende, 891 F.2d at 13 (reversing grant of fees where government's position was supported by decisions in parallel

cases and by three members of the Supreme Court).

6) When the issue is a novel one on which there is little precedent, courts have been reluctant to find the government's position was not substantially justified. See, e.g., Washington v. Heckler, 756 F.2d 959, 961-62 (3d Cir. 1985).

We examine first the agency's prelitigation position. The FDIC-Receiver initially disallowed Schock's reimbursement claim because it found Schock "failed to prove the facts set forth in the claim to the satisfaction of the Receiver." An agency's request that a claimant provide facts in support of her claim does not strike us as an adequate ground to say the government's position was not substantially justified. Furthermore, the legal effect flowing from the facts was the subject of real dispute, as we describe below.

As for whether the ensuing litigation was substantially justified, Schock argues that the weakness of the FDIC's position was established by the fact that she was clearly entitled to (although she was denied) summary judgment, twice, on her contract claim. The district court erred, Schock says, in denying her motions for summary judgment in light of the "unanimous rule" of state agency law that death of the principal

terminates apparent authority or because the undisputed facts demonstrate that the bank had actual or constructive notice of Miller's death. See, e.g., In re Estate of Kelly, 547 A.2d 284, 288 (N.H. 1988) (recognizing general rule that attorney's apparent authority terminates at death of client); accord Gallup v. Barton, 47 N.E.2d 921, 923-24 (Mass. 1934). Thus, Schock claims, the FDIC-Receiver's resistance to her reimbursement claim was not substantially justified. The FDIC-Receiver counters that the issues in the case are novel and unsettled under Rhode Island law and that substantial disputed issues of material fact existed when Schock moved for summary judgment, rendering the FDIC-Receiver substantially justified in its legal and factual arguments.

In response to Schock's complaint, the FDIC-Receiver asserted as an affirmative defense that Old Stone Bank, its predecessor in interest, had acted at the request of an agent of Miller who was possessed of actual or apparent authority. Depending on how this is viewed, that was a matter of fact or of law, or a mixed issue of fact and law. The initial question of law was whether an agent's death terminates apparent authority by operation of law without notice. If the answer to that

-14-

question was no, then two more questions arose, one of law and one of fact. The fact questions had to do with what actual or constructive notice the bank received. In Schock's second motion for summary judgment on her breach of contract claim, Schock for the first time produced evidence that bank employees had actual notice of Miller's death at the time of Nero's withdrawal based on the fact that Miller's obituary was published in a local newspaper. This then raised the legal question of what type of notice is sufficient, assuming the agent's death did not automatically terminate apparent authority.

As to Schock's legal argument -- that it is well-settled that apparent agency terminates with the death of the principal -- the question on an EAJA petition is not whether the district court was correct or incorrect in its prediction about Rhode Island law. Schock overstates the effect of the Restatement rule. Restatement § 120(1) is largely concerned with the effect of the death of the principal on the authority of the agent, not on third parties who rely on the apparent authority of the agent. Further, §§ 120(2) and (3) are concerned with the effect of a depositor's death, without notice

-15-

of death, on negotiable instruments.  Whether these provisions would apply to withdrawals by the former agent in the form of treasury checks is an open question.

The two cases Schock relies on in support of her argument are inapposite.  The only Rhode Island case Schock cites, Industrial Trust Co. v. Colt, 128 A. 200 (R.I. 1925), involved whether the authority of an agent is revoked by the principal's insanity where the authority of the agent is coupled with an interest.  The court recognized the general rule that the death or insanity of the principal operates as a revocation or suspension of the agent's authority, but did not discuss the issue before us, whether apparent authority similarly ends under the general rule.  In Walker v. Portland Savings Bank, 93 A. 1025 (Me. 1915), a case which Schock relied on at oral argument and which she presented to the district court, a bank was held liable to the estate of a depositor for allowing a withdrawal from the depositor's account by an individual who at the time possessed no authority, apparent or otherwise, to act as an agent for the decedent.  The court held that the subsequent appointment of the individual as administrator did not validate the bank's earlier payment to him because he did not seek

-16-

payment as a representative of the estate but "as an individual with pretended rights against the estate."  Id. at 1027. Accordingly, Walker has no applicability in this case, where the FDIC-Receiver claimed to have relied on Nero's prior agency status.[5]

Absent any Rhode Island precedent on point, the district court made an "informed prophecy" of what the state court would do in the same situation, Blinzer v. Marriott Int'l Inc., 81 F.3d 1148, 1151 (1st Cir. 1996), seeking guidance in "analogous state court decisions, persuasive adjudications by courts of sister states, learned treatises, and public policy considerations identified in state decisional law," id. The court concluded that the Rhode Island Supreme Court would adopt

---

[5]    During oral argument in this appeal, Schock pointed out that some states have adopted the Uniform Durable Power of Attorney Act, which protects a third party who acts in reliance on a written power of attorney and who "did not have, at the time of exercise of the power, actual knowledge of the termination of the power by revocation or of the death, disability, or incapacity of the principal . . . ." See Mass. Gen. Laws ch. 201B, § 5.  Because Rhode Island has not adopted the Act, Schock argues, the district court was bound to follow Rhode Island law and acted improperly in anticipating a new rule.  We are not aware of whether Rhode Island has ever considered adopting the Act.  In the absence of any evidence of such consideration by the Rhode Island General Assembly or courts, and given the Rhode Island courts' historical reliance on the Restatement (Second) of Agency in other contexts, the UDPAA can offer us no insight whether current Rhode Island law incorporates the automatic-termination-by-death-without-notice rule which Schock advocates.

-17-

the Restatement (Second) of Agency § 125, as Rhode Island had adopted that Restatement for other issues, and ruled that R.I. Gen. Laws § 18-4-16 applied to "third parties who in good faith pay or transfer money to an apparent agent." Schock III, 56 F. Supp. 2d at 194. The relationship between Restatement § 120, Restatement § 125, and the Uniform Fiduciary Act on these facts is far from obvious. Cf., e.g., Mubi v. Broomfield, 492 P.2d 700, 702 n.1 (Ariz. 1972) ("[A] further exception [to the Restatement rule of automatic termination of a power of attorney upon a principal's death] is sometimes made where innocent third parties are protected from dealings made in good faith with an agent and death of the principal is unknown."). The court was also faced with the FDIC's strong argument that banks should have no obligation to investigate and warrant the bona fides of an apparent fiduciary; otherwise the bank becomes a guarantor of the fiduciary, and such a result was contrary to the policies behind the UFA. It is not necessary for us to decide whether the district court's conclusion is correct; it is enough that the FDIC's legal argument was at least "justified to a degree that could satisfy a reasonable person." Pierce, 487 U.S. at 565.

After the district court rejected Schock's suggestion that Rhode Island law would deem third parties' notice of the principal's death irrelevant, there was then an open question of what constitutes notice to the bank of Miller's death. Although the district court ultimately concluded that Miller's obituary in the local newspaper was sufficient notice to the bank, that ruling does not render the FDIC-Receiver's litigation position unreasonable. In its opposition to Schock's motions for summary judgment and throughout the trial, the FDIC-Receiver disputed whether any bank employees had actual notice of Miller's death. The FDIC also argued that the proper measure of notice was actual knowledge, not constructive notice, and so the publication of Miller's obituary was insufficient to establish notice to the bank of Miller's death. That argument was not unreasonable. Indeed, in its ruling denying Schock's motion for attorneys' fees and costs, the district court acknowledged that its previous ruling on Schock's contract claim "established a new rule on the issue of notice." Schock III, 118 F. Supp. 2d at 168.

In sum, the FDIC-Receiver's litigation position -- that it was not liable to reimburse Schock because the bank had

allowed withdrawal by a fiduciary with actual and apparent authority despite the death of the principal -- had a reasonable basis in law and fact, and so we cannot say that it was not substantially justified.  We do not decide whether the district court erred in holding that the FDIC was not an "agency . . . of the United States" under the EAJA, or in its prediction of Rhode Island law governing the termination of an agent's power of attorney upon the principal's death.  _Affirmed_.